IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | )CRIMINAL NO. 1:01CR 10198-NG |
| | ) |
| v. | ) |
| | ) |
| LEO V. FELTON | ) |
| ERICA CHASE | ) |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR
DISCOVERY AND MOTION TO COMPEL DISCLOSURE OF INFORMATION**

The United States submits the following consolidated
response to the defendants' Motion for Discovery and Motion to
Compel Disclosure of Information Pursuant to Local Rule 116.6(A):

**Motion to Compel Disclosure of Information Pursuant to Local
Rule 116.6(A)**

The government has previously declined to identify one
witness pursuant to LR 116.6 out of concerns for his safety. Given
the passage of time, the government will provide to the defendants
the information about this witness required by LR 116.2(B), which
includes a proffer letter and a copy of his criminal record.
However, to the extent the defendants seek additional information
about that witness not covered by the substance and timing
requirements of LR 116.2(B)(1), the government opposes this
request. Any additional information that could be used to impeach
this witness will be provided by the government no less than 21
days before trial, as controlled by LR 116.2(B)(2).

**Motion for Discovery**

**1.   Preservation of Notes**

All applicable law enforcement agencies have been notified about compliance with LR 116.9 concerning the preservation of appropriate notes.  The local rule defines and qualifies that the law enforcement agency "at the time was formally participating in an investigation intended, in whole or in part, to result in a federal indictment."   Thus, the defendants' broad request for directed preservation of notes made "by any federal, state or local law enforcement officers in the course of their investigation of the events giving rise to this case" exceeds the scope of the local rule.   No specific authority or rationale has been provided by defendants for this attempt to graft this additional obligation on the U.S. Attorney's Office which has no control over law enforcement agencies that did not formally participate in the investigation intended to result in the federal indictment.

Apart from its legal obligations, however, it has been the practice of the U.S. Attorney's office in this case to inquire of any law enforcement officer witnesses who were involved in the initial apprehension and arrest of the defendants by Boston Police about the existence of any handwritten notes, and, when available and appropriate under discovery rules, provide them to the defendants.

As for the part of defendants' motion which seeks notes which

2

form the basis of typewritten reports, LR 116.9(B) specifically excludes the preservation of rough drafts of reports after a subsequent draft of a final report is prepared.

The government further opposes the defendants' request for the _in camera_ inspection of any notes made by government counsel when there is no other record of a witness interview, as well as its request that the government represent whether or not it instructed any agents not to take notes or write reports. The defendants have cited no authority for this request.   To the contrary, the authority that does exist holds that such notes or instructions are not discoverable, absent any exculpatory information, the substance of which, of course, the government has an obligation to disclose.

Justice Powell, in his often cited concurring opinion in _Goldberg v. United States_, 425 U.S. 94 (1976), recognized that "the fact that counsel usually take notes [when preparing for the examination of a key witness] does not mean that the notes often will be a 'statement.'   Counsel rarely take down verbatim what witnesses say in these preparatory conference.   Consequently, prosecutors' notes may be expected to meet the requirements of subsection (e)(2) very infrequently . . . The  notes taken will vary from cryptic 'memory jogs' to full summaries of the anticipated testimony." _Id_. at 122, n.9.

Thus, courts have not required prosecutors to produce their notes of interviews with witnesses in the vast majority of reported

3

cases.  In <u>United States v. Houlihan</u>, 92 F.3d 1271 (1st Cir. 1996),
the Court of Appeals recognized that the Jencks Act does not impose
any obligation on the government to record witness interviews or to
take notes during such interviews.  <u>Id</u>. at 1288.  Thus, even where
the only record of an interview deliberately was the prosecutor's
notes, there was no obligation to disclose such notes.  <u>Id</u>. at
1289.  <u>See</u> <u>also e.g.</u>,  <u>United States v. North American Reporting,</u>
<u>Inc.</u>, 761 F.2d 735, 740 (D.C. Cir.), <u>cert. denied</u>, 474 U.S. 905
(1985)(prosecutor's notes "contain incomplete, episodic statements
as to what information the witnesses possessed and what questions
the witness ought to be asked"); <u>United States v. Miller</u>, 771 F.2d
1219, 1232 (9th Cir. 1985)(fragmentary quotations contained in
counsel's notes do not constitute substantially verbatim statements
covered by Jencks Act); <u>United States v. Lamma</u>, 349 F.2d 338, 340-
41 (2d Cir.), <u>cert. denied</u>, 382 U.S. 947 (1965)(although notes were
made contemporaneously, prosecutor's notes were not statements but
were "fragmentary and do not appear to set out the substance of the
interviewee's remarks; nor is there any indication that they
conform to his language rather than that of the Assistant U.S.
Attorney . . . These jottings contain several interpolations of the
interviewer and hardly record a continuous narrative").

Given this line of precedent, the government opposes the
defendant's request for <u>in</u> <u>camera</u> inspection of government
counsel's notes of any witness interviews.

## 2.   Exculpatory Information

Defendants' motion for exculpatory evidence seeks numerous and separate categories of purportedly exculpatory information.   In this motion, defendants have greatly misconceived the meaning and scope of the Brady-Agurs doctrine.   See United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83 (1963).   See also United States v. Bagley, 473 U.S. 667 (1985).

Brady and Agurs are not cases which create a right of discovery.   "There is no general constitutional right to discovery in a criminal case, and Brady did not create one."   Weatherford v. Bursey, 429 U.S. 545, 559 (1977).

It is well settled that Brady prohibits the suppression of "evidence favorable to the accused."   United States v. Ranney, 719 F.2d 1183, 1190 (1st Cir. 1983).   By the same token, material sought under Brady need not be turned over unless it is evidence, unless it is admissible, and unless its admission could affect the outcome of the trial.   As the First Circuit in Ranney, supra, stated:

> Under Brady the prosecution has a duty under the due process clause to turn over evidence favorable to the accused upon his request (citation omitted).   The only requirement is that the evidence be material in the sense that it could have affected the outcome of the trial. (citation omitted) . . . Inadmissible evidence is by definition not material, because it never would have reached the jury and therefore could not have affected the outcome of the trial.

<u>Id</u>. at 1190.

Although the Supreme Court, by necessity, has articulated <u>Brady</u> law in a retrospective context, its definition of what is "material" should also guide the scope of the disclosure obligation.  Evidence is "material" only if there is a reasonable probability that had it been disclosed the result of the proceeding would have been different.  <u>United States v. Josleyn</u>, __F.3d__, 2000 WL 287307*5 (1st Cir., March 22, 2000), citing <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  Recently, the Supreme Court has articulated that the "reasonable probability" standard is to be measured by "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Strickler v. Greene</u>, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999), quoting <u>Kyles v. Whitney</u>, 514 U.S. 419, 434 (1995).

With these principles in mind, the government responds to the defendants' specific requests as follows:

<u>Interviews of persons not called as witnesses</u>

Where the reports contain exculpatory information, the government has complied with its obligations, and will continue to do so in a very expansive fashion.  Unless the government has specific information from an individual that shows that defendant did not commit the offenses charged or undermines the credibility

of a government witness, there is no requirement that it disclose the reports of persons interviewed who will not be witnesses. In their request for what is essentially the government's investigative file, the defendants have offered no reason why Rule 16(a)(2) should be ignored. This kind of rummaging throughout the government's file was summarily rejected in congressional debate surrounding the 1975 amendments to the criminal rules. Senator McClellan, speaking in support of the Senate version of the amendments ultimately adopted, noted that the House had introduced in the proposed criminal rules a provision permitting requests for discovery of all experts consulted but not intended to be called as witnesses. "Applications of that principle in criminal cases," he noted "would permit defendants to discover, not only all prospective government witnesses, but all individuals interviewed but not intended to be called. No one would desire such a result in criminal cases." Cong. Rec.S. 23325, July 17, 1975 (remarks of Senator McClellan).

A defendant is not entitled to discovery of such statements except as provided in the Jencks Act or Brady and its progeny. See United States v. Tarantino, 846 F.2d at 1414 n.11; United States v. Dominguez, 131 F.R.D. 556 (N.D. Ill. 1990) (defendant not entitled to list of individuals government interviewed during its investigative work who would not be testifying at trial); United States v. Percevault, 490 F.2d 126, 129 (2nd Cir. 1974); United

7

States v. Disston, 612 F.2d 1035, 1037-38 (7<sup>the</sup> Cir. 1980); <u>United States v. Mannion</u>, 480 F. Supp. 1182, 1186-87 (S.D.N.Y. 1979); United States v. Pollack, 534 F.2d 964, 975-76 (D.C. Cir.), <u>cert. denied</u>, 429 U.S. 924 (1976).

A witness statement that merely manifests a lack of knowledge of a particular inculpatory fact is not necessarily exculpatory. For example, as to the defendants' particular reference to witnesses Thomas Struss and Lisa Felton vis-a-vis Erica Chase's criminal relationship with co-defendant Leo Felton, in the government's view, these witnesses' statements are inculpatory, not exculpatory.  As such, there is no basis for early, pre-trial disclosure under the Local Rules, the Constitution, or 18 U.S.C. § 3500. See <u>United States v. Grandmont</u>, 680 F.2d 867, 874 (1st Cir. 1982)("A court may not compel the disclosure of statements of government witnesses before the conclusion of their direct testimony.").

<u>Information Concerning Previously Unidentified Witness</u>

As an initial matter, the defendants repeatedly refer to the individual -- for whom they seek early disclosure of numerous categories of potential impeachment information -- as a "cooperating witness" or "informant."   These descriptions are a misnomer in that the witness did not provide affirmative or proactive assistance to the government beyond giving a voluntary interview when questioned by agents and giving a proffer and

8

testifying when subpoenaed to the grand jury. As such, there is no reason to treat this witness, or the government's disclosure obligations, in any other way than what is required by the Local Rules. The government will provide all required exculpatory information as defined in LR 116.2 no less that 21 days before trial. Beyond that, defendants' motion should be denied.

<u>Law Enforcement Personnel Impeachment Material</u>

The government is aware of its obligations under <u>Giglio</u> with respect to law enforcement officers who are potential witnesses in this case and will furnish such information, if such exists, for law enforcement witnesses no less that 21 days before trial. However, the government opposes the defendants' request insofar as it seeks such information for agents or officers who will not be witnesses in this case and seeks information that does not involve an allegation, investigation or finding of dishonest conduct or untruthfulness by the law enforcement witness or reflects possible bias.

**3.   Presentence Report of Witness**

The defendants have moved for an <u>in</u> <u>camera</u> inspection of the any presentence report of any witness who has been or is being prosecuted in the United States District Court. The government has responded that currently only Thomas Struss is such a witness. Mr. Struss is awaiting sentencing in two cases in the District of New Jersey. Because presentence reports are, in essence, property of

9

the probation department as an arm of the court, see <u>United States</u> <u>v. Moore</u>, 949 F.2d 68, 71 (2d Cir. 1991) and cases cited therein, this U.S. Attorney's Office will bring this request to the attention of United States District Judge Jerome B. Simandle in the District of New Jersey for his permission to release the presentence reports to the judge in this case for <u>in camera</u> review, should the court (Gertner, J.) wish to follow that procedure.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  _____
S. THEODORE MERRITT
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

Lenore Glaser, Esq.
Stern, Shapiro, Weissberg & Garin
90 Canal Street, 5th Floor
Boston, MA 02114

Timothy Watkins, Esq.
Federal Defender's Office
408 Atlantic Avenue
Boston, MA 02210

This 26th day of December, 2001.

_____
S. THEODORE MERRITT
ASSISTANT UNITED STATES ATTORNEY