IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO. 01-10198-NG |
| | ) |
| v. | ) |
| | ) |
| LEO V. FELTON | ) |
| ERICA CHASE | ) |

GOVERNMENT'S TRIAL MEMORANDUM CONCERNING
THE ADMISSION OF CO-CONSPIRATOR STATEMENTS

I. INTRODUCTION

The United States intends to introduce at trial certain correspondence between the defendants and two of their co-conspirators, Wesley "Wolf" Dellinger and Michael Reid. The evidence will show that Dellinger and Reid, both incarcerated felons and white supremacist associates of defendant Leo Felton's, participated in the conspiracies charged in the Second Superseding Indictment ("the Indictment"). Reid corresponded with both Erica Chase and Felton; in fact, he introduced Felton to Chase. Dellinger, who corresponded only with Felton, put Felton in touch with other co-conspirators, including Thomas Struss. Struss later joined Felton in Massachusetts to begin perpetrating crimes as part of the "revolutionary cell" envisioned by Dellinger and Felton.

II. THE INTRODUCTION OF THE DELLINGER AND REID STATEMENTS MEET THE REQUIREMENTS OF FED. R. EVID. 801(d)(2)(E).

Between March 2000 and the defendants' arrest in April 2001, Dellinger and Reid both made statements that furthered the unlawful

goals of the conspiracies charged in the Indictment. Under Fed. R. Evid. 801(d)(2)(E), such statements are not hearsay and the United States may introduce them against defendants Felton and Chase at trial. See United States v. Bradshaw, 281 F.3d 278, 283 (1st Cir. 2002) (citing United States v. Sepulveda, 15 F.3d 1161, 1180-82 (1st Cir. 1993), cert. denied, 512 U.S. 1223 (1994)).

The Dellinger and Reid statements satisfy the requirements for the admission of co-conspirator statements under Rule 801(d)(2)(E). As outlined below, the evidence will establish (1) that the defendants Leo Felton and Erica Chase were members of an unlawful conspiracy; (2) that Wesley Dellinger and Michael Reid were also members of the conspiracy; (3) that Dellinger and Reid made relevant statements "during the course" of the conspiracy; and (4) that the relevant statements were made "in furtherance" of the conspiracy. See Sepulveda, 15 F.3d at 1180; United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). To admit the Dellinger and Reid statements under Rule 801(d)(2)(E), the government need only establish these requirements by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 176 (1987); Bradshaw, 281 F.3d at 283. Once admitted, each statement may be used for its truth against either defendant, irrespective of the original addressee of the statement. See United States v. LiCausi, 167 F.3d 36, 46 (1st Cir. 1999) (holding co-conspirator statements admitted against one defendant admissible

2

against all other members of the same conspiracy); <u>United States v. Kaplan</u>, 832 F.2d 676, 685 (1st Cir. 1987) (holding co-conspirator statements admissible even where the defendant was unaware the statements were made), <u>cert</u>. <u>denied</u>, 485 U.S. 907 (1988). It is immaterial that the United States has not actually indicted Wesley Dellinger or Michael Reid as a co-conspirator. <u>See</u> <u>United States v. Innamorati</u>, 996 F.2d 456, 486 (1st Cir. 1993). Similarly, it is irrelevant that both Dellinger and Reid were incarcerated for the duration of the conspiracy. <u>See</u> <u>United States v. Howard</u>, 115 F.3d 1151, 1156-57 (4th Cir. 1997) (rejecting the argument that statements made by an imprisoned co-conspirator cannot qualify for the Rule 801(d)(2)(E) exception).

While the United States believes that the admissibility of the Dellinger and Reid statements under Rule 801(d)(2)(E) will be clear from the evidence admitted at trial, the government is not limited to such proof. For purposes of establishing admissibility under Rule 801(d)(2)(E), this Court is permitted to consider <u>all</u> non-privileged evidence, whether or not admissible. <u>See</u> Fed. R. Evid. 104(a).

### (1) **Defendants Leo Felton and Erica Chase Were Members of an Unlawful Conspiracy**.

The United States intends to prove, per the Indictment, that defendants Leo Felton and Erica Chase willfully conspired to build and possess a destructive device, to manufacture and pass counterfeit notes, and to perpetrate other crimes in the District

3

of Massachusetts and elsewhere, and that each performed numerous overt acts in pursuit of those ends.[1]  The overall goal of the conspiracy was to blow up some structure, building, property or memorial associated with Jewish- and/or African-Americans, thereby advancing the defendants' anti-Semitic and white-supremacist goals and igniting a "racial holy war."  The evidence of this plan will easily satisfy the first threshold requirement for admissibility under Rule 801(d)(2)(E) -- that a conspiracy exist and that the defendants be members of it.  See, e.g, Sepulveda, 15 F.3d at 1180.

   (2)  **Wesley Dellinger and Michael Reid Were Co-Conspirators in the Felton-Chase Conspiracy.**

The evidence will establish that Wesley Dellinger and Michael Reid were members of the Felton-Chase conspiracy.  Evidence of each co-conspirator's participation will fall into two categories.  First, Dellinger's and Reid's own statements in their respective correspondence with the defendants will establish their involvement.  The Supreme Court has explicitly held that the court may look to an alleged co-conspirator's own statements for evidence of his participation in the conspiracy.  See Bourjaily, 483 U.S. at 181; see also Sepulveda, 15 F.3d at 1182.  Indeed, this Court has elsewhere criticized the suggestion that the Rule 801(d)(2)(E)

---

[1] In addition, the evidence will show that, in pursuit of the overall goals of the conspiracy, Felton conspired with Thomas Struss to rob a bank in Massachusetts, which they did, and to rob an armored car in New Jersey with another individual, known as "Conan," or Chris DiMunguia.

inquiry must emphasize extrinsic evidence. See Kettenbach v. Demoulas, 901 F. Supp. 486, 499 (D.Mass. 1995) (refusing to read Sepulveda to emphasize proof by extrinsic evidence). Examples of each co-conspirator's inculpatory statements appear below.

Second, a considerable pool of "independent" evidence will corroborate Dellinger's and Reid's membership in the Felton-Chase conspiracy. The amended text of Rule 801(d)(2)(E) requires at least some evidence that is independent of the proffered statements themselves. See Fed. R. Evid. 801(d)(2)(E); see also United States v. Garcia-Torres, 280 F.3d 1, 5 (1st Cir. 2002); Sepulveda, 15 F.3d at 1181-82. The First Circuit has not yet defined the quantum of independent evidence necessary. See United States v. Padro Burgos, 239 F.3d 72, 75 (1st Cir. 2001) (describing this point as an "open question"). Other circuits, however, have sensibly interpreted the independent evidence requirement as a sliding scale -- where the declarant's identity is clear and his statements clearly implicate him in the conspiracy, less corroboration is required. See United States v. Padilla, 203 F.3d 156, 162 (2d Cir. 2000).

(a)  **Wesley Dellinger**

Wesley Dellinger's own statements unequivocally implicate him in the Felton-Chase conspiracy. Dellinger, who was formerly an inmate at the same New Jersey federal prison as Leo Felton, wrote at least four letters to Felton in the period between December 2000 and April 2001. These letters contain numerous inculpatory

5

statements.  For example:

- In a February 2001 letter to Felton, Dellinger emphasized his allegiance to their shared cause: "*[Y]ou already know in your heart where my head is at in this issue . . . . You and I walk in unison, stride for stride like the sound of a hundred thousand booted (Odinic!!!) soldiers in parade march!!*"

- In the same letter, Dellinger offered encouragement to Felton: "*On a more personal level, I know you will seize the chance to secure your place in the Einherjar!*"  Thomas Struss, a witness for the United States and a confessed co-conspirator, will testify that the "Einherjar" were the "warriors" of the East Coast Aryan Brotherhood who "could be used on the streets."

- Also in the same letter, Dellinger referred at least three times to an individual named "Hammer." Thomas Struss will testify that "Hammer" was his (Struss's) nickname.  In the letter, Dellinger gave "Hammer's" father's phone number to Felton.  Dellinger also referred to "Conan," a "real good guy" who is "eager to serve his race." Struss will testify that "Conan" was the nickname for Chris DeMungia, yet another co-conspirator.

- In a letter in late April 2001 [Ostara 30][2], Dellinger praised Felton's militancy and offered to provide men to help him:  "*I may never get to serve on the leval [sic] of you and the rest of your cell/unit (Aryan Unit One), but I can produce men who can, but I need you to give me the primary tool needed.*"  Dellinger also told Felton of other recruits:  "*I could have 4 coming your way by Yule season, well 3 actually, one want [sic] to be a civilian first.*"

- In a letter dated March 11, 2001, Dellinger responded to news from Felton:  "*For the first time since I have been imprisoned I felt real progress, real dedication, real honor. . . . You are doing*

---

[2] Some of the letters use the dating of a pagan calender, with such months as Ostara, Fogmoon, Snomoon, Horning, etc.

6

> *what you are suppose [sic] to be doing as a Whiteman, doing what you were born to do.*" Thomas Struss will testify that Dellinger was reacting to news from Felton of the Boylston St. bank robbery.

- In the same letter, Dellinger offered Felton advice on robbing banks, including detailed information on common bank security technologies.

- Also in the same letter, Dellinger wrote: "*[Y]ou brothers have your work cut out for you but the 'cell' [t]hat has been formed seems to complement each other and the integrity [a]nd severity of the task ahead is understood by all.*"

A substantial body of independent evidence will corroborate Dellinger's participation in the conspiracy. The most important source of such corroboration will be the testimony of Thomas Struss, himself a cooperating co-conspirator. Struss will specifically identify Dellinger as a member of the same conspiracy. Other corroborating independent evidence will include:

- Struss's testimony that it was Dellinger who "vouched" for Leo Felton; that Struss initially contacted Felton because Dellinger urged him to do so; and that he trusted Felton precisely because Dellinger had "vouched" for him.

- Struss's testimony that the dates and events described in Dellinger's letters to Felton coincide (in Struss's recollection) with the chronology of the conspiracy.

- A letter from Struss to Felton in which Struss refers to Dellinger as "our mutual comrade."

- Struss's testimony that he and Dellinger, like he and Felton, had discussed bombing the National Holocaust Museum. This testimony, in turn, is corroborated by the discovery of a "passport" admission to the National Holocaust Museum in the Salem St. apartment maintained by Felton and Chase.

- The timing of Dellinger's last letter to Felton. The letter reacts to "news" from Felton and discusses "financial acquisitions" immediately after Struss and Felton committed the Boylston St. bank robbery.

- Several letters from Leo Felton to Erica Chase that refer to Dellinger, including one reference to "Wolfie," in which Felton asks Chase to send some materials to "Wolfie." Struss will testify that Dellinger's nickname was "Wolf."

On the basis of this and other evidence, the United States believes it will meet its burden under Rule 801(d)(2)(E) to establish that Wesley "Wolf" Dellinger was a member of the Felton-Chase conspiracy.

### (b) Michael Reid

The evidence will show that Michael Reid, a former cellmate of Leo Felton's at the Southwoods federal penitentiary in New Jersey, also played a role as a member of the conspiracy. In a series of letters dated between March 2000 and April 2001, Michael Reid provided convincing evidence of his role as co-conspirator. For example:

- In an April 2001 letter to Erica Chase, Reid took credit for introducing Chase to Leo Felton: *"LVF asked me if I had a street contact being that he was getting short. . . . I'm happy it is working out for the good of us all."* Reid was clear that Felton and Chase had come together to accomplish something: *"I'm happy to hear you and LVF are working good together."*

- In the same April 2001 letter, Reid expressed regret that his continuing incarceration would

8

>limit his ability to "*be a part in it.*" Nevertheless, Reid expressly declared his intent to be helpful: "*At least I'm not a totally useless slag behind these walls! It's good to play my part no matter how small and insignificant that may be.*"

- Also in the same letter, Reid informed Chase that he had attempted to recruit another individual for their plan -- a "*brother from Jersey who could play a part in things.*" Reid explicitly deferred to Felton's final judgment on the matter, writing that this potential recruit was "*a trust worthy [sic] brother who could play a part in things where LVF see's [sic] fit to use his help.*"

- In an April 2001 letter to Leo Felton, Reid responded to an apparent "question" from Felton regarding "like minded people I may know." Reid described a man he had met at Bordentown: "*Before meeting you he was the only other person who I actually spoke about serious revolution with.*" Reid expressed concern that this potential recruit was "volatile," but noted that he had access to weapons and therefore would "*have his uses.*" Reid volunteered to "*drop something to this guy Rob tonight and see how it goes.*"

- In the same letter, Reid indicated that he had previously spoken to Felton about "machining weapons" to avoid the "trace factor."

- In a February, 2001 letter to Felton, Reid indicated his pleasure at receiving news of Felton's apparent choice of a target: "*Museum?! I'm very excited over this news!*" Reid offered advice to Felton: "*Plan well and be careful! . . . . Many 'dry runs'!*"

These and other statements unequivocally implicate Michael Reid in the conspiracy.

Evidence independent of Reid's statements will corroborate Reid's role in the conspiracy, especially given the highly inculpatory nature of Reid's statements. See Padilla, 203 F.3d at

9

162. The independent evidence will include:

- A "passport" admission to the National Holocaust Museum, discovered in the Salem St. apartment rented by Felton and Chase. The museum passport corroborates Reid's reference to Felton's plan for a "museum," and his recommendation that Felton undertake many "dry runs."

- Thomas Struss's testimony that Struss and Felton in fact discussed bombing the National Holocaust Museum, which further corroborates Reid's reference to a "museum."

- Dellinger's warning to Felton about Reid: *"Mikey is well, though you have your work cut out for you. His self preservation is understandable but could prove dangerous in the field."*[3]

- Repeated references to Michael Reid in Felton's correspondence with Erica Chase. Felton mentions Reid in at least eight separate letters, always referring to him by the nickname "Mikey." In a letter to Chase dated July 19, 2000, Felton refers to sending Reid "bergs" -- i.e., contraband materials disguised as confidential correspondence from an attorney.

- An October 2000 letter from Felton to Chase, in which Felton describes Michael Reid as one of *"the few men who still bear within them that true Aryan essence."* Such men, Felton wrote, *"in the very near future will bring unremitting war to our enemies and pull this rotten system to the ground."*

---

[3] Dellinger's co-conspirator statements, if themselves admissible under Fed. R. Evid. 801(d)(2)(E), may serve as independent evidence of Reid's involvement in the conspiracy. See Garcia-Torres, 280 F.3d at 5-6 (allowing a statement by one co-conspirator, once properly admitted under Rule 801(d)(2)(E), to furnish independent evidence of another co-conspirator's participation in the conspiracy); see also United States v. Nippon Paper Indus. Co., 62 F. Supp. 2d 173, 183 n.17 (D. Mass. 1999) (finding that hearsay statements admitted under Fed. R. Evid. 803(6) and 806(b)(3) provided independent corroboration for purposes of the co-conspirator exception).

- The .38 caliber revolver whose serial number Felton filed off. Felton's destruction of the serial number corroborates Reid's reference to "machining weapons due to the trace factor."

- A handwritten list of white supremacist books and corresponding prices, composed by Leo Felton and discovered in Michael Reid's cell in approximately June 2001. The list includes <u>Silent Death</u>, a handbook on bio-terrorism. A copy of <u>Silent Death</u> was discovered in the April 23 consent search of Felton and Chase's Salem St. apartment. A reference to <u>Silent Death</u> was also found in Felton's black notebook at the time of arrest.

- The fact that Leo Felton and Erica Chase were in fact introduced to each other by Michael Reid, as Reid claims in his letters.

- Testimony that several of Reid's most inculpatory letters to Felton -- e.g., the letter that discusses Felton's plan for a "museum" -- were discovered <u>in the Salem St. apartment</u>.

- The history of Michael Reid's relationship with Leo Felton. Reid and Felton were cellmates at the Southwoods federal penitentiary in New Jersey in 1999. Both were disciplined by prison authorities in December 1999 when Felton was caught giving Reid a tattoo with a contraband tattoo machine. Reid and Felton both refused to cooperate with prison authorities in the investigation. At the time, Felton was a validated member of the "skinheads" prisoner group; Reid was listed as a "prospective" member.

- The timing and extent of Reid's correspondence with the defendants.[4] Reid sent his last letter to

---

[4] The timing and extent of Reid's correspondence with Felton and Chase is non-hearsay evidence independent of the content of Reid's statements. First Circuit law is clear that such evidence is admissible to satisfy the independent evidence requirement of Rule 801(d)(2)(E). <u>See</u> <u>United States v. Alosa</u>, 14 F.3d 693, 696-97 (1st Cir. 1994) (holding that drug ledgers may be admissible as evidence of the existence of a conspiracy, thereby rendering

11

>Felton only days prior to April 19, 2001, the date on which Felton and Chase were arrested by Boston police.

Taken together, the independent evidence will corroborate what Michael Reid's own words make clear -- that Reid was a willing and involved member of the conspiracy, pleased to "play [his] part no matter how small and insignificant that may be." (Reid, April 2001 letter to Erica Chase).

Courts in the First Circuit and elsewhere have admitted co-conspirator statements on the basis of considerably less extrinsic evidence. See, e.g., Sepulveda (relying on a single witness's reference to the alleged co-conspirator's involvement); Padilla, 203 F.3d at 162 (relying on a single reference to the alleged co-conspirator's alias in an incriminating note). Here, the evidence is clear that Michael Reid, like Wesley Dellinger, was a member of the criminal conspiracy led by Leo Felton and including Erica Chase and Thomas Struss.

(3) **The Dellinger and Reid Statements Were Made During the Course of the Conspiracy.**

Dellinger and Reid began and ended their relevant correspondence with the defendants "during the course" of the

---

statements within the same ledgers admissible under Rule 801(d)(2)(E)); Nippon Paper, 62 F. Supp. 2d at 183 n.17 (noting that the facial consistency of alleged co-conspirator statements may itself comprise independent evidence); see also Sepulveda, 15 F.3d at 1182 n.13 (observing that co-conspirator statements, like other forms of hearsay, are often admissible for alternative purposes).

12

Felton-Chase conspiracy. <u>Petrozziello</u>, 548 F.2d at 23. The evidence will show, per the Indictment, that the conspiracy began at least as early as March 2000 and continued at least until the defendants' arrest in April 2001. All of the relevant co-conspirator statements occurred during this period:

- Dellinger's first letter to Felton appears to have been sent in March or April of 2000; his last letter is dated March 11, 2001.

- Reid's first letter to Erica Chase, which he composed a few days after she first visited him in prison, is dated March 18, 2000. Reid's last letter appears to have been written in April 2001.

Accordingly, the Dellinger and Reid statements were made "during the course" of the Felton-Chase conspiracy for purposes of <u>Petrozziello</u>. <u>See</u> <u>Kaplan</u>, 832 F.2d at 685 (co-conspirator statements made during the time frame charged in the indictment were "during the course" of the conspiracy).

### (4) **The Dellinger and Reid Statements Were Made in Furtherance of the Felton-Chase Conspiracy**.

Lastly, the evidence will establish that many of Dellinger's and Reid's statements, including all of the examples above, were made "in furtherance" of the conspiracy. <u>Petrozziello</u>, 548 F.2d at 23. While "there is no talismanic formula for ascertaining when a conspirator's statements are in furtherance of the conspiracy," <u>LiCausi</u>, 167 F.3d at 50 (citing <u>United States v. Fields</u>, 871 F.2d 188, 193 (1st Cir. 1987)), it is well settled that the "in furtherance" requirement is to be broadly interpreted. <u>See</u> <u>Garcia-</u>

Torres, 280 F.3d at 5 (the "in furtherance" requirement is "administered flexibly"); United States v. Paone, 782 F.2d 386, 390 (2d Cir. 1986) (the "in furtherance" requirement is not a strict one), cert. denied, 479 U.S. 882 (1986). There is no requirement that the statement be necessary or even important to the conspiracy -- "as long as it can be said to advance the goals of the conspiracy in some way." United States v. Martinez-Medina, 279 F.3d 105, 117 (1st Cir. 2002). Whether the conspiracy actually succeeds in its goals is immaterial. United States v. Guerro, 693 F.2d 10, 13 (1st Cir. 1982) (declining to hold that the "in furtherance" language in Rule 801(d)(2)(E) requires "actual achievement").

Wesley Dellinger and Michael Reid, through their correspondence with the defendants, advanced the goals of the conspiracy in varied and overlapping ways. First, both Dellinger and Reid offered Felton advice for improving the effectiveness of the conspiracy's criminal activities -- for example, Dellinger offered pointers regarding bank security, while Reid recommended that Felton conduct "dry runs" before striking the museum. Such advice manifestly "advance[s] the goals of the conspiracy in some way." Martinez-Medina, 279 F.3d at 117; see also United States v. Rahme, 813 F.2d 31, 35-36 (2d Cir. 1987) (finding statements to be "in furtherance" where "they prompt a listener to respond in a way that facilitates . . . criminal activity"). Second, Dellinger and

14

Reid both offered ideas and strategies for Felton's management of the Boston "cell." Such communication greases the wheels of the conspiracy and ensures its continued operation. See Sepulveda, 15 F.3d at 1181 ("[T]he sharing of pertinent information about a conspiracy's mode of operation furthers the conspiratorial ends."). Similarly, Dellinger and Reid both praised Felton's criminal successes in Boston and conveyed approval of his chosen targets. See Rahme, 813 F.2d at 912 (noting that statements that serve to maintain trust and cohesiveness among conspirators further the conspiracy). Finally, Dellinger and Reid both discuss identifying, evaluating and recruiting new co-conspirators. Courts have repeatedly recognized that such efforts to expand and fortify a conspiracy comprise activities "in furtherance" of the conspiracy. See, e.g., United States v. Shea, 211 F.3d 658, 668-69 (1st Cir. 2000) (the recruitment of new co-conspirators is in furtherance of the conspiracy), cert. denied, 531 U.S. 1154 (2001); United States v. Tarantino, 846 F.2d 1384, 1412 (D.C. Cir. 1988) (inviting others to join a conspiracy is in furtherance of the conspiracy, regardless of whether the recruitment is successful); United States v. Shoffner, 826 F.2d 619, 628 (7th Cir. 1987) (statements made to potential recruits are in furtherance of the conspiracy), cert. denied, 484 U.S. 958 (1987).

The United States does not contend that every word composed by Dellinger and Reid was in furtherance of the Felton-Chase

conspiracy -- indeed, much of it is "idle chatter." <u>Martinez-Medina</u>, 279 F.3d at 117.  But where Dellinger and Reid discuss the activities of Leo Felton and/or Erica Chase, their own efforts to recruit new members of the conspiracy, or any other issue pertinent to the crimes charged in the Indictment, their statements are almost invariably in furtherance of the goals of the conspiracy and consequently admissible against both Felton and Chase under Rule 801(d)(2)(E).  <u>Petrozziello</u>, 548 F.2d at 23.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
S. THEODORE MERRITT
EMILY R. SCHULMAN
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery to Lenore Glaser, Esq. Stern, Shapiro, Weissberg & Garin, 90 Canal Street, 5th Floor Boston, MA 02114; Timothy Watkins, Esq., Federal Defender's Office, 408 Atlantic Avenue, Boston, MA 02210.

This 18th day of June, 2002.

_____
S. THEODORE MERRITT
ASSISTANT UNITED STATES ATTORNEY