IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 01-10198-NG |
| | ) | |
| v. | ) | |
| | ) | |
| LEO FELTON | ) | |

## UNITED STATES' RE-SENTENCING MEMORANDUM

The United States submits the following memorandum which both responds to the points raised in the defendant's sentencing memorandum and articulates the government's sentencing recommendation.

It is anticipated that the pre-sentence report ("PSR") will reflect that the sentencing guideline range for Leo Felton is 262-327 months, plus a consecutive 60 months derived from the reinstatement of his conviction for possessing a firearm in furtherance of the conspiracy to build a destructive device.  The government recommends that the Court sentence the defendant within the range of 322 to 387 months.

**PRIOR SENTENCING PROCEEDINGS**

At sentencing in 2002, both the Court and the parties acknowledged that under the Armed Career Criminal Act and the Sentencing Guidelines, Felton's sentence was "almost exclusively driven by [his] record." [Sent. Tr. 3].  Felton did not dispute that he had four prior convictions for crimes of violence, but argued and filed a motion under U.S.S.G. §4A1.3 for a downward

departure on the grounds that his criminal record "substantially
over-represented the seriousness of defendant's criminal history."
[Sent. Tr. 19-21].   In essence, Felton argued that two of the
assaultive offenses occurred in prison and close in time to each
other.  He also argued that the offenses were the product of the
violent prison environment and offered a lengthy letter to the
Court and the report of a forensic psychologist in support of his
request for a downward departure. Id.

Nevertheless, the Court rejected the request for a sentence
below the Guideline range. [Sent. Tr. 19].  The Court articulated
why it rejected Felton's request for a downward departure, even
though it acknowledged that it had the authority and discretion to
do so:

> I have departed downward several times in the
> past when someone says to me that their record
> overstates their culpability.  And I've done
> so with career offenders and I believe I've
> even done so with armed career criminals.  But
> I made certain rules.  And, in my cases, the
> sentencing decisions that I've written, would
> reflect that.
>
>     One is that I have ever rarely, if ever,
> done that where the prior record is
> a violent record.  And where the record is a
> violent   record   --   and   this   is   almost
> exclusively  a  violent  record  --  I  have
> departed downward, against the government's
> position,  when  the  defendant  --  when  it's
> clear that the prior record was a product of
> drug addiction.
>
> This case seems to be so distinguishable from
> those cases in which I have departed downward,

> where this is a violent record explained by
> psychological issues.  But those are the
> psychological issues that would inhere in many
> other cases.  I don't see anything that
> distinguishes this to suggest that I should
> depart downward.
>
> And there's also a question of uniformity
> here.  I have tragically sentenced more street
> dealers than I care to remember to sentences
> which I regarded as ridiculous because they
> had records far less serious than Mr.
> Felton's. . . . I can't see how, when I put
> this case in the context of all the cases that
> I've sentenced, that a downward departure
> makes sense.

[Sent. Tr. 18-19].

The Court stated its belief that the sentence was "fair," and
based "on the acts that you did, and how frightening their
potential was and how troubling they could well have been." [Sent.
Tr. 40].

**CURRENT RE-SENTENCING**

**Legal Principles**

In sentencing a defendant under the dictates of 18 U.S.C.
§3553, the "starting point" for a district court is "the guideline
range, taking applicable departures into account."  United States
v. Saez, 444 F.3d 15, 17 (1st Cir. 2006).  Having established the
GSR, a district court must evaluate the sentencing factors set out
in 18 U.S.C. §3553(a), "along with any other relevant
considerations." United States v. Dixon, 449 F.3d 194, 204 (1st
Cir. 2006). However, the Guidelines "remain[] 'an important

consideration.'"  <u>United States v. Smith</u>, 445 F.3d 1,2 (1st Cir. 2006).  A district court must then determine "whether a sentence above, within, or below the GSR is warranted."  <u>Dixon</u>, 449 F.3d at 204.  Deviations from the GSR "must be grounded in case-specific considerations, not in general disagreement with broad-based policies enunciated by Congress or the [Sentencing] Commission, as its agent."  <u>United States v. Sagendorf</u>, 445 F.3d 515, 517 (1st Cir. 2006).

**The GSR Is The Appropriate Sentence**

The only thing that has effectively changed since the previous sentencing of Felton is that the First Circuit has reinstated the §924(c) conviction, mandating the imposition of a consecutive five-year sentence.[1]  The Court previously rejected all of Felton's claims for downward departures based on "case-specific considerations," and Felton has advanced no new arguments that warrant any variance from the GSR.  Indeed, a calibration of the sentencing factors articulated in 18 U.S.C. §3553(a) support a sentence within the GSR.

**The Nature and Circumstances of the Offense**

Felton's hate-driven plot to detonate a bomb targeting black

---

[1] Felton's request for a decrease in the GSR for acceptance of responsibility should be summarily rejected.  In his letter to the Court, he is no more accepting of personal responsibility than when he wrote a letter in 2002.  Narcissistic "insights" do not equate to remorse or true acceptance of personal responsibility.

4

and/or Jewish institutions was not only serious in its planning, it was potentially devastating to many innocent lives. But, by operation of the ACCA guidelines, his GSR accounts only for his possession of a firearm as a convicted felon. Certainly, defendant's recommended sentence of the 15 year statutory minimum for being an armed career criminal fails to take account for the myriad of crimes of which the defendant was also convicted, including conspiracy to build a  destructive device, receiving explosives with the intent to kill, bank and armored car robbery, counterfeiting and obstruction offenses.

### The History and Characteristics of the Defendant

Felton continues to mischaracterize, minimize and shift blame for his past violent criminal conduct.  His past crimes are extremely violent in nature and occurred over a number of years. In October, 1989, Felton was charged with attempted murder and assault with intent to cause serious injury related to his confrontation with an Hispanic taxi driver in New York City. Felton's version of the offense, rejected by the jury as shown in his 2002 sentencing letter, was that he never touched the tire iron used to beat the driver. As shown in the PSR, the victim suffered a fractured jaw and skull.  Moreover, contrary to Felton's assertions that he harbored no racial animosities prior to going to prison, the PSR cites reports that indicate that he bragged to others that he had beaten a Pakistani.

While on release from this charge, in November, 1989, Felton and a friend burglarized a fraternity house at Rutgers and ended up beating a member who chased them.   While it is unclear who inflicted the injuries, the victim received 15 stitches in the side of the head.   Notably, the records reflect that racial slurs were made during that assault, and the victim harbored a paranoia later about "skinheads."   Thus, contrary to Felton's claims, the prison climate he entered neither triggered his violence nor his racial hostilities.

In prison, however, he only sharpened both proclivities.   In February, 1993, in a New York prison Felton assaulted an Hispanic inmate with a razor, causing a 12" laceration on the side of his face and others on his arms and hands.   In a New Jersey institution in July, 1993, Felton attacked a black inmate with a razor because he felt the inmate had reached over his plate at dinner.   Contrary to Felton's claim in 2002 "that I felt threatened so I assaulted him with a razor," the assault took place by ambush some two hours later while the inmate was watching television.   After slicing the inmate in the neck with razor, Felton screamed, laughed and yelled "that he wanted blood and that he felt good."

Felton's attempt to explain away his sustained history of violent conduct by reference to the prison context is not only belied by the facts of his pre-prison conduct, but notably, by the crimes he committed and planned to commit upon his release.   His

plans to use explosives to bring death and damage to the community were not situational nor reactive.  They represented a calculated and deliberate course of violent action to bring about his misguided goals of racial separation.   In any event, as the Court noted before, "others [who have been exposed to prison] have not succumbed in the same way." [Sent. Tr. 23].

Moreover, Felton continues to misbehave in prison.  Among the seven incidents warranting discipline that Felton has perpetrated while in the custody of the Bureau of Prisons, two were for fighting; one was for assaulting the Warden at Lewisburg by throwing a feces-type liquid at him; and one was for sending razor blades and contraband to another inmate.   In fact, Felton was so disruptive that he received a disciplinary transfer to FCI Marion.

**The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment and Afford Adequate Deterrence**

In today's world the gravity of Felton's crimes cannot be overstated.   It is one thing to construct a destructive device, which is illegal in and of itself.   It is even more serious and deserving of additional punishment to be building such a device for the avowed purpose of killing persons and destroying their property or memorials or museums because of their perceived ethnicity and race.   *See* <u>Barclay v. Florida</u>, 463 U.S. 939 (1983)(a sentencing judge properly may take into account the defendant's racial animus towards his murder victim where that animus is relevant to several

7

statutory aggravating factors).

That Felton claims to have abandoned his plans for a racial war does little to diminish the seriousness of his crime. [2]   Even if one were to divorce the specific motivation for his crime, Felton's devotion to carrying out terroristic acts to advance any agenda needs to be amply punished for deterrence purposes  as well.

### Protection of Society from Further Crimes of the Defendant

Felton needs to be isolated from society for its general protection.  His history of violence makes him a poor candidate for rehabilitation.[3]   The general safety of society would be much better served if Felton's re-entry were delayed until he was sixty, rather than fifty.

---

[2]Dr. DiCatldo reports that "[w]hile Felton still maintains a belief in the basic evolutionary based differences of the races, he no longer feels the same activism or motivation to do anything about it."

[3]Even Dr. DiCataldo acknowledges that "the rehabilitation of a life-course persistent criminal offender, the so-called antisocial or psychopathic character, is a problem that mental health intervention has little empirical evidence supporting its success."  Although he hopes that Felton's personality disorders stems from his internal conflicts about his racial identity, he cannot rule out other explanations.

**CONCLUSION**

In this case, the GSR, which begins at 322 months, is the appropriate sentence.  Felton has offered no individualized bases that would warrant any sentence below that range.  While a court may regard that range as harsh, any disagreement with the general severity of those guidelines is not a basis to sentence below the GSR.  See <u>United States v. Pho</u>, 433 F.3d 53, 62 (1st Cir. 2006). Here, the seriousness of the offense and the individual history of the defendant snugly fit the sentencing range that the guidelines have determined.  This range is also the right sentence.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  */s/ S. Theodore Merritt*

S. THEODORE MERRITT
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I, S. Theodore Merritt, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

*/s/ S. Theodore Merritt*

S. THEODORE MERRITT
Assistant U.S. Attorney