# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Docket No. |
| v. | ) 1:01-cr-10198-IT |
| | ) |
| LEO OLADIMU | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant requests that this Court impose a Guideline sentence of 188 months, with a period of supervised release to be served in Southern California, where he has friends and resources ready to support him and to assist in his re-integration.

**I.    The Defendant's GSR is 151-188 months because he neither an Armed Career Criminal nor a Career Offender, and his offense level is 29.**

The Defendant is not an Armed Career Criminal post-*Johnson*. And because only one of his prior convictions is a crime of violence or a violent felony, his offense level is only 29. Because he has a criminal history category of VI, his offense level of 29 results in a GSR of 151-188 months. USSG § 5A (2005).

### A. The Defendant has only one predicate offense.

For the reasons stated in the Defendant's previously filed Amended 28 U.S.C. § 2255 Motion (Doc. 351) and Reply (Doc. 361), incorporated herein by reference, only one of the four previously identified crimes currently qualifies as either an ACC predicate under § 924(e) or a career offender predicate for guideline purposes.

#### 1. New Jersey Aggravated Assault is not a violent felony or a crime of violence.

New Jersey Aggravated Assault is overbroad. It permits conviction upon a finding of recklessness. It permits conviction where injury results from other acts than violent force. And it permits conviction upon a finding of mere attempt. (Doc. 351 at 14-17.) New Jersey Aggravated Assault is not a predicate violent felony under the ACCA, and it is not a crime of violence as defined in USSG § 4B1.2.

The government's reliance on *Baptiste* for the contrary holding (Doc. 407 at 2) is misleading because *Baptiste* was decided under the unconstitutional residual clause of 18 U.S.C. § 16(b). *Baptiste v. Att'y Gen* 841 F.3d 601, 606-15 (3rd Cir. 2016). To the extent that *Baptiste* relies on an unconstitutional residual clause, it is not persuasive.

#### 2. New Jersey Burglary is not a violent felony or a crime of violence.

New Jersey Burglary requires no violent force. It is not generic burglary because it punishes breaking into any structure, not merely a building. (Doc. 351 at 17-18.)

### 3. New York First Degree Assault is not a violent felony or a crime of violence. (PSR ¶ 94.)

New York First Degree Assault, New York Penal Law § 120.10(1) (1996), is overbroad because it does not require that the victim is injured by the application of violent physical force. (Doc. 351 at 19-20.) It does not require any use of violent force at all. (*Id.*)

At any rate, the legal question is moot, because government did not establish which subsection of the statute the Defendant was convicted under. (*Id.*) It is beyond dispute that the other paragraphs of the statute are not all violent felonies or crimes of violence. (*Id.*) To establish a conviction under the first paragraph, the government produced no *Shepard*-admissible documents.

For its general argument that the Defendant's conviction is a valid predicate here, the government cites an unpublished Second Circuit opinion, *United States v. Houston*, 732 Fed.Appx. 24, 28-29 (2d Cir. 2018) (unpublished). But *Houston* is neither authoritative as a matter of law nor relevant in the absence of admissible Shepard documents.

### 4. The Defendant preserves for further review that New York Second Degree Assault is not a violent felony or a crime of violence.

The First Circuit has held that New York Second Degree Assault is a violent felony. *Lessand v. United States*, 898 F.3d 115

(1st Cir. 2018). The Defendant contests the finding because the statute lacks as an element the use of violent force. (Doc. 351 at 18-19.)

### B. Because the Defendant has only one predicate offense, his offense level is 29.

Per the analysis adopted in the Memorandum of Susan Wells ("Wells Memo"), the Defendant's post-*Johnson* offense level is 29.

The Wells Memo bases the post-*Johnson* calculation on the 2006 PSR findings. Thus, the offenses remain grouped as they were in 2002; the Defendant receives no credit for acceptance of responsibility; and the Defendant is assumed to have possessed a firearm "in connection with" his conspiracy to rob the bank. Only the number of predicate offenses under 18 U.S.C. § 924(e) and under USSG § 4B1.2 are altered.

The Defendant renews his previous objections to the previous PSR. But let us assume *arguendo* that none of his objections is sustained. For the purpose of re-sentencing, only the number of predicate offenses will be altered, and all other findings in the 2006 PSR will remain as they were.

Under these conditions, and using the Guidelines operative in 2006, the Defendant's offense level is calculated as follows:

Group 1: Offense Level 24, USSG §§ 2K2.1(a)(3), 3C1.1;

Group 2: Offense Level 20, USSG § 2K2.1(a)(4);

Group 3: Offense Level 26, USSG §§ 2K2.1(a)(4), 2K2.1(b)(4);

> Group 4: Offense Level 17, USSG §§ 2B5.1(a), 2B5.1(b)(2)(A), 2B5.1(b)(3); and
>
> Adjusted: Offense Level 29, USSG § 3D1.4

The Defendant's analysis here tracks the analysis in the Wells Memo. The number of predicate offenses are adjusted post-*Johnson*, and all other findings in the 2006 PSR remain as they were. (Wells Memo at 2.)

The Defendant's results diverge from the Wells Memo results only because the Wells Memo relies on the wrong edition of the Guidelines. The Wells Memo calculates the Group 3 Offense Level as 28 because the Wells Memo uses the current Guidelines. Use of the current Guidelines is error. The current Guidelines impose a 4-point enhancement for effacement of a serial number, USSG § 2K2.1(b)(4) (2018), whereas the 2005 Guidelines impose only `a 2-point enhancement, USSG § 2K2.1(b)(4)(2005). To avoid being placed in double jeopardy, the Defendant is entitled to use of the 2006 Guidelines.

Using the analysis in the Wells Memo but correcting its reliance on the wrong edition of the Guidelines, the Defendant has an offense level of 29. This results in a GSR of 151-188 months. USSG § 5A (2005).

> **II.    This Court should not consider recent alleged misconduct reported by the BOP because the Defendant and his attorney have not had an opportunity to discuss the alleged incidents in a confidential setting.**

March 20, 2020, one day before the scheduled re-sentencing, the Defendant's attorney received the Wells Memo, which contains, *inter alia*, a list of alleged misconduct reported by the BOP. (Wells Memo at 5.) The Defendant has not yet had the opportunity to discuss these allegations by the BOP with counsel in a confidential setting. He is currently incarcerated at the Donald W. Wyatt Detention Facility in Rhode Island, where the waiting time for an attorney call is over a week long. Staff at Wyatt explained that this is a result of (1) remote court hearings, which require use of the same resources as attorney calls, and (2) staff absences, which are increasing. (Affidavit of Counsel ¶¶ 2-5.)

Although the Defendant received some reports from the government, he did not receive reports related to all of the listed infractions. And he did not receive them in time to discuss schedule an attorney call. (*Id.* at ¶¶ 6-7.) He respectfully urges that he has a Sixth Amendment and Fourteenth Amendment (due process) right to a confidential meeting with counsel regarding these allegations before they can be considered in his sentencing.

### III. The Defendant is highly likely to die of COVID-19 if he remains incarcerated during the next six months

The Defendant is incarcerated at the Donald W. Wyatt Detention facility in Rhode Island. He has previously provided an affidavit accurately describing the conditions of incarceration among the general population. (Affidavit of Defendant at ¶¶ 2-6.) He was initially assigned to the general population and believed, until last week, that he would ultimately be returned there. Thus, his initial affidavit described the conditions of the general population and not the conditions of inmates in restrictive custody. Attached here is a second affidavit describing conditions in restrictive custody. (*See id.*)[1] The security measures at Wyatt do not prevent or even slow the introduction and transmission of COVID-19 therein, and it is irrelevant which part of the facility he is held in.

### IV. The Defendant is rehabilitated and will contract COVID-19 if sent to a halfway house.

For the reasons stated in his Emergency Motion for Release Pending Sentencing (Doc. 394); Emergency Motion for Release Pending Adjudication of Amended 28 U.S.C. § 2255 Motion (Doc. 399) and supporting Affidavit of Counsel (Doc. 400); and Emergency Motion for PSR (Doc. 405), incorporated herein by reference, the Defendant suggests that continued incarceration has no social value.

---

[1] The affidavit is unsigned because there was not time to wait for its return by mail.

It is not necessary for the protection of society or for further rehabilitation. As punishment, it would violate the 8th Amendment by exposing him to an unconstitutionally high risk of contracting a deadly infection. COVID-19 has now entered the Wyatt facility where he is incarcerated. (Affidavit of Counsel ¶ 9.) It is only a matter of time until it reaches the Defendant.

If the Defendant is released to a halfway house, he will be confined to yet another dormitory environment where social distancing is impossible and from which people come and go in violation of the CDC-recommendation to shelter in place. For someone with the Defendant's health conditions, a halfway house is equally prohibited by Eighth Amendment considerations during the pandemic because it is equally likely to result in his death.

## V. The Defendant has a comprehensive release plan.

The Defendant proposes release to his partner's apartment in Southern California, where he plans to make use of numerous resources available to assist in the re-integration of prisoners returning home after long periods of incarceration. (Affidavit of Counsel ¶¶ 10-11.)

### A. Education and Employment

The Defendant recognizes that a GED does not prepare him for work that is sufficiently challenging or interesting to engage him in the long term. (*Id.* ¶ 12.) He intends to enroll in a high quality "coding

8

camp," a high-intensity training program that teaches smart and motivated people without prior computer-science experience how to write computer code. (*Id.* ¶ 13.) He anticipates receiving long-term financial and logistical support for his education from Project Rebound, an organization that operates out of U.C. San Bernadino. (*Id.* ¶ 14.)

### B. Social Re-Integration.

The reality is that social reintegration after an environment like Lewisburg is a slow and painful process. Mr. Oladimu is aware that sudden re-emersion in a crowded, noisy, chaotic world has undone inmates with the best of intentions. (*Id.* ¶ 15.) He anticipates making a slow re-entry, balancing healthy social contact with his inevitable need for extensive time alone. (*Id.* ¶ 16.) He is lucky to have the support of his partner, who has a job and an apartment in Southern California and is ready to provide financial support as he makes this transition. (*See* Doc. 408, Letter of Allie Tempus.)

He recognizes that his tattoos, which broadcast his former ties to white supremacist groups, will be a major obstacle to healthy and successful reintegration wherever he might choose to live, work, and educate himself. (Affidavit of Counsel ¶ 17.) He himself finds them repugnant. (*Id.* ¶ 18.) Luckily, there is an organization in California to help him. Homeboy Industries helps people like Mr. Oladimu who are physically marked by former ties to anti-social organizations. (*Id.* ¶

9

19.) While he is living with his partner, learning some computer-science, and feeling his way back into the rhythms of daily life, he will also be removing his tattoos. (*Id.* ¶ 20.)

### C. Community

As indicated by his letters and testimony of support, spanning 2002 until today, Mr. Oladimu is fortunate. He has a supportive community invested in his long-term success. He is smart, engaged, and eager to begin a new life, far from prison and far from the white-supremacist beliefs he adopted there. He continues to work to analyze the processes that brought him to that place. He considers that his absorption into and recovery from the poison of white supremacy gives him a unique ability to analyze its dangers and to share insight into how it spreads and continues to poison our society. (*See* Exhibit 1, Inside the Hive Mind; Exhibit 2, Defendant's Letter to the Court.)

He asks this court to release him. After all this work and all this progress, he does not want to die of a preventable illness, far from his friends and family.

### CONCLUSION

For the reasons stated above, the Defendant should be sentenced to 188 months and to supervised release out of the Southern District of California, for a period of time to be determined by the court.

Respectfully Submitted,
LEO OLADIMU

By his attorney,  
/s/ Dana Goldblatt  
Massachusetts BBO# 601022  
The Law Office of Dana Goldblatt  
150 Main Street, Ste 28  
Northampton, MA 01060  
413-570-4136  
dana@danagoldblattlaw.com

Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) on April 21, 2020.

/s/ Dana Goldblatt