UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA           *
                                   *
        v.                         *           Criminal No. 1:01-cr-10198-IT
                                   *
LEO V. OLADIMU                     *
                                   *

MEMORANDUM AND ORDER
May 1, 2020

TALWANI, D.J.

I.    Introduction

        Petitioner Leo V. Oladimu's petition for a writ of habeas corpus under 28 U.S.C. § 2255

challenges his conviction[1] under 18 U.S.C. § 924(c) as invalid under United States v. Davis, 139

S. Ct. 2319 (2019), and his punishment under the Armed Career Criminal Act as invalid under

Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"). Petitioner's Supp. Mem. 1

[#380]. For the following reasons, the petition is GRANTED.

II.   Procedural History

        Following a jury trial, Petitioner was found guilty on twelve counts, including possession

of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §924(c)(1) and

possession of a firearm as a convicted felon in violation of 18 U.S.C. §922(g)(1).[2] The court

---

[1] Petitioner was originally charged and convicted under the name Leo Vincelette Felton. The
court subsequently granted Petitioner's Motion to Amend Judgment [#313] to reflect his legal
name change to Leo V. Oladimu and ordered that change to be reflected on all Bureau of Prison
records going forward. Order [#319]. Recently, the court directed the clerk to change Petitioner's
name on the docket to Leo V. Oladimu. Elec. Order [#386].

[2] He was also convicted of conspiring to make and possess a destructive device, in violation of
18 U.S.C. §371 and 26 U.S.C. §§5822, 5841, and 5861(d) and (f); attempting to receive
explosives with intent to kill or injure persons or damage property in violation of 18 U.S.C.
§ 844(d); conspiring to make and pass counterfeit federal reserve notes in violation of 18 U.S.C.
§§371, 471, and 472; making counterfeit federal reserve notes in violation of 18 U.S.C. §§ 471
and 472; conspiring to obstruct justice in violation of 18 U.S.C. §§371; obstructing justice in
violation of 18 U.S.C. §1512(b)(2)(B); conspiring to commit bank robbery and to interfere with

granted Petitioner's Renewed <u>Motion for Acquittal</u> [#190] as to the § 924(c) count. Order [#205].

At his 2002 sentencing, Petitioner was identified as an Armed Career Criminal, <u>see</u> <u>Sentencing</u>

<u>Memorandum of Defendant</u> 1 [#224]; <u>United States' Sentencing Memorandum</u> 1 [#228], and he

was sentenced to a corresponding guideline sentence of 262 months on the eleven remaining

counts. Judgement [#231]. On appeal, Petitioner's conviction was affirmed, the conviction as to

the § 924(c) count was reinstated, and the sentence vacated. Judgment of USCA [#278]. On

remand in 2006, Petitioner was resentenced to a guideline sentence of 262 months on the original

eleven counts and an additional 60 months on the § 924(c) count. Amended Judgment [#306].

Petitioner was represented by CJA counsel during the trial, appeal, and resentencing.

Petitioner's first petition under 28 U.S.C. § 2255 was filed *pro se,* arguing ineffective

assistance of counsel by his CJA counsel and juror misconduct. Mot. Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence ("Original § 2255") 6 [#311]. The court denied the

petition in 2009. <u>See</u> <u>Felton v. United States</u>, 07-cv-11961-NG (D. Mass.).

On June 26, 2015, the Supreme Court issued its decision in <u>Johnson v. United States</u>, 135

S. Ct. 2551 (2015), holding unconstitutional the imposition of an increased sentence under the

residual clause of the Armed Career Criminal Act.

On October 6, 2015, the District Court for the District of Massachusetts issued General

Order 15-1, Standing Procedural Order re: Appointment of Counsel and Motions for Relief from

a Conviction or Sentence ("General Order 15-1"). Pursuant to General Order 15-1, the Federal

Public Defender was directed to contact the CJA lawyer who previously represented a defendant

if the Federal Public Defender's Office determined, after review of Presentence Reports, that the

defendant had a colorable claim for relief under <u>Johnson II</u>. The General Order provided further

---

commerce by robbery in violation of 18 U.S.C. §§371, 1951(a), and 2113(a); and aiding and
abetting bank robbery in violation of 18 U.S.C. §2113(a) and 18 U.S.C. §2.

that if the CJA lawyer was willing to represent the defendant and determined that the defendant had a colorable claim for relief, the CJA lawyer was to file a request to be appointed for the purpose of preparing and filing a habeas petition.

On May 4, 2016, Petitioner's trial counsel sought appointment to represent Petitioner pursuant to General Order 15-1 "for the purpose of preparing and filing a petition under 28 U.S.C. § 2255, seeking relief" under Johnson II. Motion to be Appointed Counsel [#325]. The court granted the motion the following day and directed that the petition should be filed by June 6, 2016. Elec. Order [#327]. On June 8, 2016, CJA Counsel advised the court that she did not intend to file "a second petition pursuant to 18 U.S.C. § 2255." Notice [#329]. The Notice stated that she had been appointed to review Petitioner's sentence calculation and had determined that Johnson II was not applicable to his situation. Id. CJA counsel stated further that she wrote to Petitioner on May 6, 27, and 29, 2016, "to explain that she did not believe that he was eligible for relief." Id.

On April 24, 2017, the Federal Public Defender's Office sought to be appointed to file a Johnson II claim on Petitioner's behalf. Motion for Appointment of Counsel [#330]. The court granted the motion for appointment, Elec. Order [#331], and on July 11, 2017, the First Circuit granted leave for Petitioner to file this second or successive motion under 28 U.S.C. § 2255 pursuant to the gatekeeping standard set forth at 28 U.S.C. § 2244(b)(2)(A) and 28 U.S.C. § 2255(h)(2).[3] See Judgment of the USCA [#334]. The Appeals Court noted Petitioner's challenge to his Armed Career Criminal designation based on Johnson II[4] and expressed no

---

[3] This standard allows a second or successive motion to be certified if it contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

[4] In Welch v. United States, the Supreme Court held that Johnson II's determination that the definition of a prior "violent felony" in the residual clause of the ACCA was unconstitutionally vague announced a substantive rule that applied retroactively on collateral review. 136 S.Ct.

3

opinion on whether Petitioner's challenge under 18 U.S.C. § 924(c) met the gate keeping

requirements. Id.[5] The Appeals Court deemed the petition filed as of April 26, 2017, and took no

position on its merits or timeliness. Id.

Proceedings were stayed several times on the parties' joint motions. On June 24, 2019,

while Petitioner's Amended 28 U.S.C. § 2255 Motion [#351] was pending, the Supreme Court in

United States v. Davis, 139 S. Ct. 2319, 2336 (2019), held the residual clause of 18 U.S.C.

§ 924(c) to be unconstitutionally vague.

On February 6, 2020, the court appointed Defendant successor CJA counsel. Elec. Order

[#389].

III.   Analysis

A.   The § 924(c) Claim

Because the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019),

finding the residual clause of 18 U.S.C. § 924(c) to be unconstitutionally vague "has the same

limiting effect on the range of conduct or class of people punishable under § 924(c)" that

Johnson II has with respect to the ACCA, Davis, like Johnson II "'announced a substantive rule

that has retroactive effect in cases on collateral review.'" In re Mullins, 942 F.3d 975 (10th Cir.

2019) (quoting Welch, 136 S.Ct. at 1268). The petition's § 924(c) claim thus satisfies the

gatekeeping requirements of 28 U.S.C. 2244(b)(4) and was timely filed under the Antiterrorism

and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2255(f).[6]

---

1257 (2016).

[5] See 28 USC 2244(b)(4) (stating that "[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.")

[6] 28 U.S.C. § 2255(f)(3) provides that a one year period of limitations for motions brought under § 2255 runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively

The parties agree that the predicate offense underlying Petitioner's § 924(c) conviction --

conspiracy to make and possess a destructive device in violation of 18 U.S.C. § 371 and 26

U.S.C. §§ 5822, 5841, and 5861(d) and (f) -- does not qualify as a predicate under the remaining

portions of § 924(c) and, so, must be vacated. Supplemental Memorandum in Light of United

States v. Davis 1 [#380] (citing United States v. Reece, 938 F.3d 630, 635-36 (5th Cir. 2019) for

the proposition that conspiracy convictions do not satisfy the force clause even if the object of

the conspiracy would); Government's Response to Supplemental Memorandum in Light of

United States v. Davis 1 [#384] (conceding that Petitioner's conviction under 18 U.S.C. § 924(c)

is "no longer viable" and the court "should schedule a resentencing…on his eleven other counts

of conviction"). As such, Petitioner's motion to vacate his conviction under 18 U.S.C. § 924(c) is

GRANTED.

B. The ACCA Claim

The Armed Career Criminal Act (ACCA) provides for a mandatory minimum sentence of

15 years for any person convicted of a firearms offense in violation of 18 U.S.C. § 922(g) if that

person has three prior convictions for offenses committed on three different occasions that each

constitute either a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1). A "violent

felony" is any crime punishable by imprisonment for more than one year that either "has as an

element the use, attempted use, or threatened use of physical force against the person of

another"[7] or "is burglary, arson, or extortion, [or] involves use of explosives."[8] 18 U.S.C.

§ 924(e)(2)(B). In Johnson II, the Supreme Court found ACCA's third category of "violent

_____

applicable to cases on collateral review."

[7] This clause is commonly referred to as "the force clause."

[8] This clause is commonly referred to as "the enumerated clause."

felony," encompassing a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another,"[9] 18 U.S.C. § 924(e)(2)(B)(ii), unconstitutional.

In anticipation of Petitioner's original sentencing, the U.S. Probation Department identified four predicate convictions as the basis for designating him an Armed Career Criminal. Presentence Report (PSR) ¶ 104. Petitioner challenges the classification of each of these convictions as "violent felonies" under the ACCA. The government opposes the petition both as to timeliness and on the merits.

1. Timeliness

The government raises two timeliness-related issues.

First, Petitioner's petition was filed more than one year after the Supreme Court's decision in Johnson II and is thus untimely under AEDPA. However, AEDPA's statute of limitations "is not jurisdictional." Day v. McDonough, 547 U.S. 198, 205 (2006). Petitioner argues that the court should consider his ACCA claim in order to prevent a miscarriage of justice because he is actually innocent of being an Armed Career Criminal, see Am. Mtn. 9 [#351]; Pet.'s Reply 4 [#361], and because the circumstances warrant equitable tolling of the one year filing deadline. See Am. Mtn. 9 [#351]; Pet.'s Reply 7-9 [#361]. The government disputes both points. Gov't Opp'n 6-10 [#353].

The court need only reach equitable tolling.[10] The one year statute of limitations on filing a § 2255 motion is subject to equitable tolling if a petitioner demonstrates "(1) that he has been

---

[9] This clause is commonly referred to as "the residual clause."

[10] In Dretke v. Haley,  the petitioner had been convicted, during the penalty phase of a bifurcated trial, of a state habitual offender charge and, having failed to argue he was ineligible for that charge at trial or on direct appeal, sought post-conviction relief on the ground that he was actually innocent of the penalty enhancement. 541 U.S. 386, 390 (2004). The Court, noting that it had recognized "an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default," mandated that a "federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation omitted). Such tolling should "be invoked only sparingly," Neverson v Farquharson. 366 F.3d 32, 42 (1st Cir. 2004) (internal quotation omitted), and, at a minimum, is "appropriate only when circumstances beyond the petitioner's control have prevented him from filing on time." Id.

The record supports equitable tolling here. The Supreme Court issued its decision in Johnson II on June 26, 2015. The district court delegated initial review of potential Johnson II claims to the Federal Defenders' office. The Federal Defenders' office determined that Petitioner had a colorable claim for relief and referred the matter to CJA counsel who had represented Petitioner at trial and on appeal. See Motion to Appoint Counsel [#325]. CJA counsel requested appointment to represent Petitioner "for the purpose of preparing and filing a petition under § 2255," without disclosing the potential conflict given Petitioner's claim of ineffective assistance in his first habeas petition. CJA counsel then wrote three times to Petitioner telling him that he did not have a meritorious claim.

The government notes that Petitioner was able to file *pro se* pleadings. Gov't Opp'n 7 [#353]. Petitioner, however, is not a lawyer and was advised by his court-appointed counsel that he had no claim. The court finds court-appointed counsel's advice, together with the failure to advise the court of her conflict, presents an extraordinary circumstance that stood in Petitioner's way. Furthermore, the court finds that Petitioner demonstrated diligence in pursuing his rights where substitute counsel ultimately filed a § 2255 motion ten and a half months after trial counsel's notice that she would not be filing the petition.

---

address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

The government argues further that for Petitioner's claims to be timely following <u>Johnson II</u>, he must establish that it is "more likely than not he was sentenced solely pursuant to ACCA's residual clause" and that he has failed to make this showing. Gov't Opp'n 10-11 [#353] (quoting <u>Dimott v. United States</u>, 881 F.3d 232, 243 (1st Cir. 2018)). Petitioner responds that he must have been sentenced under the residual clause because the convictions fail under the other two clauses. Pet.'s Reply 10 [#361]. He points to <u>Lassend v. United States</u>, 898 F.3d 115 (1st Cir. 2018), in which the petitioner made a similar argument and the First Circuit moved on to evaluate the merits of his claim, ultimately holding that three of the predicate offenses did, in fact, satisfy the force clause. <u>Id.</u> The court finds that the issue may best be addressed here by considering the question of what happened at sentencing and the merits of the <u>Johnson II</u> claim together, recognizing, however, that Petitioner must show that the residual clause more likely than not provided the basis for the ACCA enhancement at the time of sentencing before the court may find for the Petitioner.

2. <u>The Potential ACCA Predicates</u>

The PSR identified four convictions as ACCA predicates: "New York Assault with Intent to Cause Serious Injury with a Weapon" (referred to herein as New York First Degree Assault) (PSR ¶ 94), New York Second Degree Assault (PSR ¶ 98), New Jersey Aggravated Assault (PSR ¶ 97), and New Jersey Burglary (PSR ¶ 95). PSR ¶ 104.

a. <u>Conviction 1: New York First Degree Assault (PSR ¶ 94)</u>

Petitioner and the government agree that Petitioner was convicted of First Degree Assault under N.Y. Penal Law § 120.10,[11] but dispute whether the offense of conviction can be more

---

[11] Discussion here of that statute is based on the version in effect at the time of the conviction which provided as follows:

A person is guilty of assault in the first degree when:

precisely pinpointed to subsection (1) of that statute. Am. Mtn. 19 [#351]; Gov't Opp'n 14-15 [#353].

Petitioner points to the "Sentence and Commitment" form dated July 17, 1991 (the date of Petitioner's sentencing for that offense), which identifies the conviction only as "assault first degree PL 120.10." New York Criminal Documents 4 [#353-1]. The government points to a 2001 "Certificate" in which the County Clerk and Clerk of the Supreme Court, New York County, certified that "it appears from an examination of the records on file in this office" that Petitioner was indicted for attempted murder in the second degree, and "Assault in the First Degree PL 120.10(1)," and that Petitioner was tried and found guilty of the "Assault in the First Degree PL 120.10(1)." New York Criminal Documents 3 [#353-1].[12]

---

1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or

2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or

3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person; or

4. In the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he, or another participant if there be any, causes serious physical injury to a person other than one of the participants.

N.Y. Penal Law § 120.10 (McKinney 1991).

[12] The government also points to a computer-generated "Certificate of Disposition" dated July 19, 2018, in which the court clerk certified that "it appears from an examination of the records on file in this office" that Petitioner was sentenced for the crime of "Assault 1st Degree PL 120.10 01 CF," and a letter from the clerk on the same date indicating that the original indictment and complaint were destroyed in a warehouse fire. New York Criminal Documents 1-2 [#353-1]. Petitioner argues that the 2018 Certificate of Disposition is insufficiently reliable to establish the offense of conviction. Reply 18 [#361] (citing United States v. Green, 480 F.3d 627, 633-35 (2nd Cir. 2007)). In Green, the court recounted testimony in a New York state case explaining that prior to the 1990's, as a rule, voted indictments such as the one at issue there did not specify a statutory subsection. When these indictments were filed, data entry clerks were unable to enter subsections into computer files, and when a defendant pled guilty or was convicted, no

Petitioner argues that the 2001 Certificate may not be considered to establish the offense of conviction. Am. Mtn. 19 [#351] (citing <u>Shepard v. United States</u>, 544 U.S. 13, 26 (2006)). Moreover, he argues that, if the document may be considered, a certification of what "appears" to be the offense of conviction is insufficient to establish that offense with the requisite certainty. Am. Mtn. 19 [#351] (citing <u>Shepard</u>, 544 U.S. at 21, and <u>Mathis v. United States,</u> 136 S.Ct. 2243, 2257 (2016)). <u>Shepard</u> directs sentencing courts seeking to determine whether a guilty plea to a statute that covered crimes that fall under the ACCA and those that do not to look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26. Here, the threshold question is different in two regards. First, the court is not determining what part of an overbroad statute was necessarily the offense of conviction, but rather, whether Petitioner was charged and found guilty of first-degree assault under subsection (1), under some other subsection, or under the first degree assault statute without reference to a subsection. Second, the court is not making this determination at an initial sentencing but on a habeas petition where Petitioner has the burden to show that the sentencing court sentenced him under the residual clause.

The 2001 Certificate, signed by the Clerk of the Supreme Court, New York County, is a judicial record reporting both that he was indicted and was found guilty under subsection (1). The court finds this Certificate amounts to at least presumptive evidence that he was indicted and

---

subsection was entered into the computer. <u>Id.</u> at 634. However, because "the current law requires that a subsection be assigned in the records of pertinent crimes, the computers have been programmed to indicate subsection one or '01' as the default subsection without regard to what the proper subsection should be." <u>Id.</u> (quoting <u>Jamal Green II</u>, 13 Misc.3d 1242(A), 2006 WL 3457236, at *4). This data entry problem need not be addressed here. Because Petitioner must show in this habeas petition that it was more likely than not that he was sentenced under the residual clause, the court focuses on the documents that were available at the time of original sentencing, and not the 2018 computer-generated "Certificate of Disposition."

found guilty under that subsection. <u>See</u> N.Y. Crim. Proc. Law § 60.60(1) ("A certificate issued by a criminal court, or the clerk thereof, certifying that a judgment of conviction against a designated defendant has been entered in such court, constitutes presumptive evidence of the facts stated in such certificate."); <u>see also</u> <u>United States v. Green</u>, 480 F.3d 627, 633 (2d Cir. 2007) ("In New York, a Certificate of Disposition is a judicial record of the offense of which a defendant has been convicted. . . . Such certificates are regularly considered by the New York courts in deciding whether the sentence on a given defendant should be enhanced on the ground that he has previously been convicted of a certain type of crime or a certain number of crimes"); <u>Cf.</u> <u>United States v. Henderson,</u> 841 F.3d 623, 632 (3d Cir. 2016) (finding a "Report of Courts Showing the Conviction of Certain Violations of the Controlled Substance, Drug, Device, and Cosmetic Act" to be a "reliable judicial record" such that "there was no error in considering it along with the other mutually corroborating records relied upon by the District Court.")

Petitioner argues that the 2001 certificate is not conclusive. The original Presentence Report prepared by the Probation Office in advance of Petitioner's 2002 sentencing and amended in advance of his 2006 resentencing lists the relevant conviction not as "New York first degree assault" but rather as "Assault w/ Int. to Cause Serious Injury w/ a Weapon." Subsection (1) of N.Y. Penal Law § 120.10 holds that "[a] person is guilty of assault in the first degree when…[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument…" Of the four statutory subsections, it is the only one that includes as an element the use of a weapon. The Presentence Report, thus, informed the court, consistent with the Certificate of Disposition, that Petitioner was convicted under subsection (1). Petitioner filed no objection to the crime of conviction being so identified. At the April 21, 2020, hearing, Petitioner's counsel argued that, at his original sentencing, Petitioner had no incentive to object to the language by which the

conviction was listed in the Report. That may be so. Nonetheless, in light of that unobjected-to identification of the crime of conviction in the PSR and the absence of any evidence to rebut the accuracy of the 2001 Certificate, the court finds Petitioner's conviction was under N.Y. Penal Law § 120.10(1) and was understood to be under that subsection at the time of sentencing.

Petitioner further contends that N.Y. Penal Law § 120.10(1) includes acts involving the application of indirect force that does not amount to "violent force." Reply 19 [#361]. In Johnson v. United States ("Johnson I"), the Supreme Court construed "physical force" in the clause "has as an element the use, attempted use, or threatened use of physical force against the person of another" to mean "violent force—that is force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010) (quoting 18 U.S.C. § 924(e)(2)(B)).

Petitioner argues that the court should follow the analysis in Whyte v. Lynch, 807 F.3d 463 (2015). There, the First Circuit found that Connecticut's third degree simple assault statute would cover conduct that results in "physical injury" but does not require the "use of physical force," such as "intentionally caus[ing] physical injury by 'telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim'" Id. at 469 (quoting United States v. Villegas-Hernandez, 468 F.3d 874, 879 (5th Cir. 2006)). The court pointed to the text of the subsection of the statute at issue, which identified only two elements, the "intent to cause physical injury to another person," and "caus[ing] injury to such person or to a third person." Id. The court found that "[m]issing from this text is any indication that the offense also requires the use, threatened use, or attempted use of 'violent force,'" and that it "speaks to the 'who' and the 'what' of the offense, but not the 'how,' other than requiring 'intent.'" Id.

However, the New York statute at issue here differs from the Connecticut statute. In addition to the two elements at issue in Whyte, N.Y. Penal Law § 120.10(1) has a third element

that provides the "how": "by means of a deadly weapon or a dangerous instrument." New York defines a dangerous instrument, in turn, as "any instrument, article or substance, including a 'vehicle' as that term is defined in this section, which, under the circumstances in which it is used…is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13) (McKinney 1991). It is the additional element that requires "use" of the deadly weapon that provides the required "use, threatened use, or attempted use of 'violent force.'"

As the government highlights, <u>see</u> Gov't Opp'n 16 [#353], the First Circuit has twice held that Massachusetts Assault with a Dangerous Weapon ("ADW"), which a person violates when he, "by means of a dangerous weapon, commits an assault upon another," satisfies the ACCA force clause. <u>United States v. Whindleton</u>, 797 F.3d 105, 116 (1st Cir. 2015) (quoting M.G.L. ch. 265, § 15B(b)); <u>see also</u> <u>United States v. Am</u>, 564 F.3d 25 (1st Cir. 2009). Under Massachusetts law, a dangerous weapon includes an object that, "as used by the defendant, [is] capable of producing serious bodily harm." <u>Whindleton</u>, 797 F.3d at 114 (quoting <u>Commonwealth v. Tevlin</u>, 433 Mass. 305 (2001)). The court finds that First Degree Assault under N.Y. Penal Law § 120.10(1) similarly satisfies the force clause.

b. <u>Conviction 2: 1994 New York Second Degree Assault, N.Y.P.L. § 120.05(7) (PSR ¶ 98)</u>

The First Circuit found a conviction of assault in the second degree in violation of N.Y. Penal Law § 120.05(7) to be a violent felony for the purposes of the ACCA in <u>United States v. Lassend</u>, 898 F.3d 115, 127 (1st Cir. 2018).[13] Accordingly, the court finds Petitioner's 1994 conviction for this same crime to be a violent felony under the ACCA.

---

[13] The Petitioner, recognizing that this court is bound by the First Circuit's holding, has reserved the issue for further review, arguing that <u>Lassend</u> was wrongly decided. Pet.'s Reply 20 [#361].

c.   Conviction 3: 1994 New Jersey Aggravated Assault (PSR ¶ 97)

On April 18, 1994, Petitioner plead guilty[14] to aggravated assault in violation of N.J. Stat.

Ann. § 2C:12-1b(1) (West 1994), which provides:

> A person is guilty of aggravated assault if he: (1) Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury…

Petitioner argues that this statute is "overbroad" in that it encompasses activity not contemplated

by the ACCA force clause, and, thus, cannot be considered a predicate conviction for the

purposes of classifying him as an Armed Career Criminal. Am. Mtn. 14-17 [#351]; Pet.'s Reply

11-16 [#361]. The government disagrees. Gov't Opp'n 16-21 [#353].

First, Petitioner argues that the offense can be committed with a *mens rea* of

"recklessness," which is insufficient under First Circuit law to satisfy the force clause. Am. Mtn.

14 [#351] (citing United States v. Windley, 864 F.3d 36, 38 (1st Cir. 2017)). The government

does not dispute that a conviction encompassing crimes committed with a *mens rea* of

recklessness would be overbroad. Gov't Opp'n 17 [#353]. Rather, the government argues that

§ 2C:12-1b(1)'s recklessness "under circumstances manifesting extreme indifference to the value

of human life," is more than baseline recklessness because it requires a "probability" of death or

injury as compared to a mere "possibility." Gov't Opp'n 18 [#353] (citing State v. Curtis, 479

A.2d 425, 430 (N.J. Super. Ct. App. Div. 1984)).[15] However, as Petitioner highlights, the New

---

[14] Petitioner contends that this conviction is set forth in a "Judgment and Order of Commitment" from Middlesex County, New Jersey, and that the Indictment mirrored the language of the statute. Am. Mtn. 14 [#351]. No copy of these documents was filed by either side in connection with the habeas petition.

[15] The government also notes that aggravated assault under this subsection is a second degree felony, whereas aggravated assault for "[r]ecklessly caus[ing] bodily injury to another with a deadly weapon," under § 2C:12-1b(3), is a fourth degree felony. Gov't Opp'n 18 [#353] (citing N.J. Stat. Ann. § 2C:12-1(b)(1)).

14

Jersey criminal code delineates and defines only four mental states: purposely, knowingly, recklessly, and negligently. Pet.'s Reply 11 [#361] (citing N.J. Stat. Ann. § 2C:2-2(b)). The distinction between recklessness and "extreme indifference" recklessness is the degree of risk, which is an objective inquiry that depends on outside circumstances rather than a perpetrator's state of mind and does not, thus, create a separate, more culpable *mens rea*. Pet.'s Reply 12 [#361] (citing State v. Curtis, 479 A.2d 425, 430 (N.J. Super. Ct. App. Div. 1984) and State v. Radziwil, 563 A.2d 856, 863 (N.J. Super. Ct. App. Div. 1989)). In State v. Curtis, the court considered the distinction between N.J. Stat. Ann. § 2C:11-4(a)(1) aggravated manslaughter and N.J. Stat. Ann. § 2C:11-4(b)(1) manslaughter where aggravated manslaughter is defined as "recklessly caus[ing] death under circumstances manifesting extreme indifference to human life,"[16] and simple manslaughter is criminal homicide that "is committed recklessly." See 479 A.2d at 430. The court found that the same statutory definition of "recklessness" applies to both forms of manslaughter. Id. The difference between the two is the "degree of risk" as established by "the second element in aggravated manslaughter," the relevant "circumstances," which are "objective and do not depend on defendant's state of mind." Id.

Moreover, even if the court were to consider "extreme indifference" recklessness to identify some midpoint between the *mens rea* of "reckless" and "knowing," the government has offered no argument distinguishing it from Massachusetts' "wanton or reckless" *mens rea* which is defined as "indifference to or disregard of probable consequences to" another in carrying out activity for which there is "a high degree of likelihood that substantial harm will result…" Commonwealth v. Welansky, 316 Mass. 383, 399 (1944); see Pet.'s Reply 12 [#361]. The First Circuit has held that Massachusetts offenses encompassing "wanton or reckless" behavior do not

---

[16] The language in the aggravated assault statute differs slightly, but not meaningfully, referencing indifference to "the value of" human life.

satisfy the force clause of the ACCA.[17] <u>United States v. Windley</u>, 864 F.3d 36, 38 (1st Cir. 2017)). Neither party argues that N.J. Stat. Ann. § 2C:12-1b(1) is divisible. Therefore, because Petitioner's 1994 New Jersey conviction for Aggravated Assault (PSR ¶ 97) was based on an overbroad statute that includes "reckless" conduct, the conviction does not categorically constitute a predicate offense for the purposes of the ACCA and is not counted here.[18]

> d.   <u>Conviction 4: 1994 New Jersey Burglary</u>

Petitioner argues that the New Jersey burglary statute under which he was convicted is overbroad as compared to the generic federal definition of burglary and, as such, does not constitute enumerated burglary under the ACCA. The government disagrees, and argues further that before the court considers the merits of this claim, Petitioner must establish that it is "more likely than not he was sentenced solely pursuant to ACCA's residual clause." Gov't Opp'n 10-11 [#353] (quoting <u>Dimott v. United States</u>, 881 F.3d 232, 243 (1st Cir. 2018)). The court addresses both arguments.

In <u>Dimott</u>, the First Circuit denied three petitions for post-conviction relief filed within one year of <u>Johnson II</u> as untimely because petitioners had not demonstrated that "their original ACCA sentences were based solely on the residual clause." <u>Dimott</u>, 881 F.3d 234. All three petitioners had been considered Armed Career Criminals on the basis of "a history of Maine state burglary convictions." <u>Id.</u> However, as Petitioner highlights, the First Circuit had held in <u>United</u>

---

[17] Petitioner also notes that, even if "extreme indifference" recklessness does constitute a heightened *mens rea*, the government does not make an argument as to why it satisfies the ACCA force clause. Pet.'s Reply 13 [#361]. In <u>United States v. Rose</u>, 896 F.3d 104, 112-13, the First Circuit explained in the context of a Rhode Island assault statute that even if it agreed that "wantonness" was a heightened mental state as compared to "recklessness," the government "would still have to clear the additional hurdle of showing that crimes that can be committed 'wantonly' satisfy the force clause."

[18] The court does not reach Petitioner's second and third arguments for overbreadth.

States v. Duquette, 778 F.3d 314, 317 (1st Cir. 2015), that Maine burglary constitutes generic burglary and therefore constitutes "burglary" under the enumerated clause. Pet.'s Reply 9 [#361]. Moreover, at the time of the petitioners' original sentencing, district courts considered Maine burglary to satisfy the enumerated clause and, when the habeas claims of two of the petitioners were reviewed by their sentencing judges, those judges explicitly confirmed that they had considered Maine burglary to satisfy enumerated burglary at sentencing. Dimott, 881 F.3d at 235, 241.

Here, in contrast, as both sides agree, the New Jersey burglary statute is not limited to generic burglary. In United States v. Taylor, the Supreme Court held that burglary under the enumerated clause was a crime "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime," where ships, vessels, cars, vehicles, and airplanes do not qualify as buildings or structures. 495 U.S. 575, 599, 602 (1990). Taylor went on to explain that some states define burglary more broadly, including entry into cars and vending machines, for example. Id. at 602. New Jersey's burglary statute is one such statute, with "structure" defined as "any building, room, ship, vessel, car, vehicle or airplane, and also…any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present," N.J. Stat. Ann. § 2C:18-1 (West 1994), and the specific offense charged here providing:

> A person is guilty of burglary if, with the purpose to commit an offense therein he:
> (1) Enters a structure, or a separately secured or occupied portion thereof, unless the structure was at the time open to the public or the actor is licensed or privileged to enter; or
> (2) Surreptitiously remains in a structure or a separately secured or occupied portion thereof knowing that he is not licensed or privileged to do so.

N.J. Stat. Ann. § 2C:18-2 (West 1994).[19]

Faced with a statute that covered more than generic burglary, it is likely that the court considered the crime under the residual clause. Petitioner points to First Circuit cases finding Florida burglary of an unoccupied structure and Massachusetts breaking and entering to qualify as ACCA predicates under the residual rather than the enumerated clause. Am. Mtn. 12 [#351] (citing United States v. Sanchez-Ramirez, 570 F.3d 75 (1st Cir. 2009) and United States v. Patterson, 882 F.2d 595, 604 (1st Cir. 1989)). The Florida burglary statute at issue in Sanchez-Ramirez defined burglary as "entering or remaining in a dwelling, structure, or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain," Fla. Stat. § 810.02(1) (1994), where "structure" was further defined as a "building of any kind ... together with the curtilage thereof." Id. § 810.011(1). Because generic federal burglary does not encompass burglary of "the curtilage," see Taylor v. United States, 495 U.S. 575 (1990), the First Circuit found the Florida statute did "not fit the definition of 'generic burglary,'" and, as such, did not fall within the enumerated clause of the ACCA. Sanchez-Ramirez, 570 F.3d at 82. Thus, the court "look[ed] only to the residual clause," ultimately finding that the Florida burglary statute fell within its ambit. Id. at 82 n.7, 83. The New Jersey burglary statute under which Petitioner was convicted similarly defines "structure" more broadly than the generic federal crime such that the enumerated clause does not apply. The New Jersey statute also fails to satisfy the force clause,[20]

---

[19] The relevant version of the statute is the one in effect at the time of the conviction. United States v. Faust, 853 F.3d 39, 57 (1st Cir. 2017) (citing McNeill v. United States, 563 U.S. 816, 820 (2011)). Petitioner erroneously quoted the current version of the statute in his Amended Motion 17-18 [#351] as did the government in its Opposition. 22-23 [#353]. Petitioner corrected this error in his Reply. 16 n.15 [#361].

[20] Petitioner was convicted of second-degree burglary, which includes the infliction of bodily injury on another "purposely, knowingly, or recklessly." Actions committed with a *mens rea* of recklessness are insufficient to satisfy the force clause of the ACCA. United States v. Windley,

and thus, it is more likely than not that the sentencing court found the conviction qualified as an ACCA predicate under the residual clause.

On the merits, Petitioner contends that "the locational *element* is a 'structure,' while the list of sundry locations set forth at § 2C:18-1 are *means* of establishing that element," making the New Jersey statute overbroad and indivisible. Pet.'s Reply 16 [#361] (emphasis in original). The government responds that the statute is divisible, with different locations amounting to different elements, and that the modified categorical approach may be used to find that Petitioner's burglary falls within the generic federal definition. Gov't Opp'n 22-24 [#353].

In Mathis v. United States, the court reiterated that to determine whether a prior conviction is for generic burglary, courts apply the categorical approach, focusing "solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." 136 S.Ct. 2243, 2256-57 (2016) (citing Taylor, 495 U.S. at 600–601). The Supreme Court went on to find that Iowa's burglary statute reached a broader range of places than generic burglary, and that those "listed locations are not alternative elements, going toward the creation of separate crime. To the contrary, they lay out alternative ways of satisfying a single locational element." Id. at 2250. The Supreme Court rejected the notion that elements and means should be treated similarly, hypothesizing a statute that defined burglary as "involving merely an unlawful entry into a 'premises' – without any further elaboration," as indisputably including an element broader than that of the generic offense, and finding no "material changes" if the law further notes "that a 'premises' may include 'a house, a building, a car, or a boat.'" Id. at 2255. In the Supreme Court's view, "[i]n

---

864 F.3d 36, 38 (1st Cir. 2017). The government does not argue that the conviction satisfies the force clause.

every relevant sense, both functional and legal, the two statutes – one saying just 'premises,' the other listing structures and vehicles – are the same." Id. at 2256.

"The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." Mathis, 136 S.Ct. at 2256. Sentencing courts are to make this determination by looking first to state law: does a state court decision definitively answer the question or does the statute on its face resolve the issue, such as by setting different punishments (making the alternative items elements) or setting them forth as illustrative examples (making them means) or by explicitly identifying which elements are to be charged. Id. Only if state law fails to provide clear answers may sentencing judges look to the record of the prior conviction, but even then, may do so for the sole and limited purpose of determining whether the listed items are elements of the offense. Id. at 2257. The court may not ask, however, "whether the defendant's conduct – his particular means of committing the crime – falls within the generic definition." Id.

Here, the language of the statute is very similar to the statute at issue in Mathis. But neither side has offered any state law authority to definitively resolve the question. The government asserts that the court must therefore consider Petitioner's own indictment as evidence that burglary of each kind of structure constitutes a separate offense. Gov't Opp'n 22-23 [#353].[21] The indictment charges that Petitioner "did unlawfully enter the structure of the Gamma Sigma Fraternity at 19 Union Street, New Brunswick, New Jersey with the purpose to commit an offense therein…" New Jersey Criminal Documents 2 [#353-2]. The government asserts that "the locational element requiring proof beyond a reasonable doubt was that he

---

[21] The government also points to model jury instructions, but those correspond to the current version of the statute and not the statute at the time of conviction.

entered the structure of the fraternity house located at the provided address." Gov't Opp'n 23 [#353].

The government's contention that the indictment clarifies whether the statute is divisible or indivisible would be compelling if the indictment had charged that Petitioner had entered the "building of the Gamma Sigma Fraternity at 19 Union Street, New Brunswick, New Jersey." From that, the government could have argued that a "building" is an element of the crime. Instead, the indictment uses the term "structure" supporting Petitioner's contention that the statute, like the statute in Mathis, is indivisible, and does not amount to generic burglary under the enumerated clause. See Mathis, 136 S.Ct. at 2257.

Because Petitioner's 1994 New Jersey conviction for Burglary (PSR ¶ 97) is not an enumerated offense and may no longer be designated an ACCA predicate under the residual clause, the conviction does not constitute a predicate offense for the purposes of the ACCA and is not counted here.

3.   The Appropriate Analysis at Resentencing

Only two of Petitioner's four potential predicate offenses are "violent felonies" under the ACCA after Johnson II: his 1991 New York First Degree Assault conviction under N.Y. Penal Law § 120.10(1) and his 1994 New York Second Degree Assault conviction under N.Y. Penal Law § 120.05(7). Without a third qualifying predicate offense, the ACCA's mandatory minimum sentence and the corresponding sentencing guidelines do not apply to him. See 18 U.S.C. § 924(e)(1); USSG § 4B1.4.

The court notes, however, that, while the categorical and modified categorical analyses required under ACCA may seemingly produce "counterintuitive" results, see Mathis, 136 S. Ct. at 2251, undisputed acts of violence can still be taken into account at sentencing. See Fed. R. Crim. P. 32(i)(3) (providing that the sentencing court "may accept any undisputed portion of the

presentence report as a finding of fact"); see also United States v. Mercer, 834 F.3d 39, 48 (1st Cir. 2016) ("[T]he District Court was free to accept the undisputed portions of the PSR as findings of fact"); United States v. Del Valle-Rodriguez, 761 F.3d 171, 176 (1st Cir. 2014) ("We have held that an upward variance may be justified by, say, a finding that the defendant's criminal history score underrepresents the gravity of his past conduct, or by a finding that the GSR underestimates the likelihood of recidivism") (internal citations omitted).

IV.   Conclusion

Accordingly, because the predicate offense underlying Petitioner's § 924(c) conviction does not qualify as a predicate in light of United States v. Davis, 139 S. Ct. 2319 (2019), and because Petitioner is no longer an Armed Career Criminal for sentencing in light of Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"), the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 is GRANTED. The clerk shall promptly set a hearing for resentencing.


IT IS SO ORDERED.

Date:   May 1, 2020                                   /s/ Indira Talwani
                                                     United States District Judge