UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| UNITED STATES | ) | |
| | ) | Cr. No. 01-10198-IT |
| v. | ) | Civ. No. 07-11961-IT |
| | ) | |
| LEO V. OLADIMU | ) | |
| | ) | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM FOR RESENTENCING

The United States respectfully submits the information contained herein in advance of the May 6, 2020 resentencing of defendant Leo Oladimu (Defendant) in light of *United States v. Davis*, 139 S.Ct. 2319 (2019). As set forth below, the Court should sentence Defendant to 274 months in prison.

### A. The Applicable USSG Range.

On May 1, 2020, this Court granted Defendant's Petition for a Writ of Habeas Corpus under 18 U.S.C. § 2255, finding that the predicate offense underlying his 18 U.S.C. § 924(c) conviction does not qualify as a predicate in light of *United States v. Davis*, 139 S.Ct. 2319 (2019), and that Defendant is no longer an Armed Career Criminal (ACC) for sentencing in light of *Johnson v. United States,* 135 S.Ct. 2551 (2015). Dkt. No. 413, at 22. The Court further found that two of Defendant's four prior felony convictions still qualify as violent felonies after *Johnson*. *Id.*, at 21. While the government agrees that *Davis* invalidated Defendant's Section 924(c) conviction and therefore resentencing is necessary, the government maintains that all four of Defendant's prior convictions survive *Johnson*, and that Defendant is an ACC for resentencing purposes.

1

Regardless, Defendant's two prior violent felonies, as found by this Court, qualify him as a Career Offender with respect to Count 12 (bank robbery in violation of 18 U.S.C. § 2113(a)) under the United States Sentencing Guidelines (USSG).  Further, given that he has at least two prior felony convictions of crimes of violence, the appropriate base offense level calculations for Groups I (Counts 1, 2 and 8), II (Count 4) and III (Counts 5, 11, and 12) remain unaffected, because USSG §§ 2K2.1(a)(1) and 2K2.1(a)(2) both require only two predicate felony convictions, which the Court has so found.  Accordingly, as set forth in the Presentence Report (¶¶ 46-88) and in the April 20, 2020 Memorandum regarding the Impact of *Johnson* prepared by the United States Probation Department (the April 20, 2020 Memo), in light of the Court's decision on his Section 2255 petition, Defendant's Total Offense Level is 33, pursuant to the 2000 version of the USSG Manual.

Defendant incorrectly assumes the version of the USSG in effect at his 2006 resentencing would apply on resentencing.  Under USSG § 1B1.11, the Court shall use the USSG in effect on the date of sentencing (*i.e.*, May 6, 2020), unless the USSG manual in effect on the date of the commission of the offenses proves more beneficial to Defendant.  Under the 2018 version of USSG § 2K2.1(b)(4) currently in effect, Defendant would receive a 4-level increase for an obliterated serial number under USSG § 2K2.1(b)(4), resulting in an offense level of 32 for Group 3 (Counts 5,11 and 12), and a total offense level of 35 under USSG § 3D1.4.  Under the 2000 version of the USSG § 2K2.1(b)(4), Defendant receives only a 2-level increase for an obliterated serial number, resulting in an offense level of 30 for Group 3 and a total offense level of 33 under USSG § 3D1.4.  Accordingly, because the 2000 version of the USSG, in effect at the time Defendant committed the instant offenses, is more beneficial than the 2018 version of the

USSG currently in effect, the Court should use the 2000 version of the USSG in calculating the applicable sentencing range. The table below details the calculation under both the 2000 and 2018 versions of the USSG manual:

| Group | Counts | USSG | 2000 | 2018 |
|-------|--------|------|------|------|
| I | 1,2,8 | 2K2.1(a)(1) | 26 | 26 |
| | | 3C1.1 (obstruction) | +2 | +2 |
| | | **TOL** | **28** | **28`** |
| | | | | |
| II | 4 | 2K2.1(a)(2) | 24 | 24 |
| | | **TOL** | **24** | **24** |
| | | | | |
| III | 5,11,12 | 2K2.1(a)(2) | 24 | 24 |
| | | 2K2.1(b)(4) (obliterated serial#) | +2 | +4 |
| | | 2K2.1(b)(5) (2000) 2K2.1(b)(6) (2018) (possession in connection with another felony) | +4 | +4 |
| | | **TOL** | **30** | **32** |
| | | | | |
| IV | 6,7,9 | 2B5.1(a) | 9 | 9 |
| | | 2B5.1(b)(2) (use of computer minimum offense level 15) | +6 | +6 |
| | | **TOL** | **15** | **15** |

3

Accordingly, because Defendant remains a Criminal History Category VI, the applicable

USSG range if Defendant is not an ACC is 235-293 months.

## B. Prior Sentencing Proceedings.

### 1. December 2002 Sentencing.

At sentencing in 2002, both the Court (Gertner, D.J.) and the parties acknowledged that

under the Armed Career Criminal Act and the Sentencing Guidelines, Defendant's sentence was

"almost exclusively driven by [his] record." Dkt. No. 271, at 3. Defendant did not dispute that

he had four prior convictions for crimes of violence, but argued and filed a motion under

U.S.S.G. § 4A1.3 for a downward departure on the grounds that his criminal record

"substantially over-represented the seriousness of defendant's criminal history." *Id.*, at 19-21.

In essence, Defendant argued that two of the assaultive offenses occurred in prison and close in

time to each other. He also argued that the offenses were the product of the violent prison

environment and offered a lengthy letter to the Court and the report of a forensic psychologist in

support of his request for a downward departure from the applicable USSG range of 262 to 327

months. *Id.*

The Court rejected Defendant's request for a sentence below the applicable USSC range.

Dkt. No. 271, at 19. The Court articulated why it rejected Defendant's request for a downward

departure, even though it acknowledged that it had the authority and discretion to do so:

> I have departed downward several times in the past when someone says
> to me that their record overstates their culpability. And I've done so
> with career offenders and I believe I've even done so with armed career
> criminals. But I made certain rules. And, in my cases, the sentencing
> decisions that I've written, would reflect that.
>
> One is that I have ever rarely, if ever, done that where the prior record is

> a violent record. And where the record is a violent record – and this is almost exclusively a violent record – I have departed downward, against the government's position, when the defendant – when it's clear that the prior record was a product of drug addiction.
>
> This case seems to be so distinguishable from those cases in which I have departed downward, where this is a violent record explained by psychological issues. But those are the psychological issues that would inhere in many other cases. I don't see anything that distinguishes this to suggest that I should depart downward.
>
> And there's also a question of uniformity here. I have tragically sentenced more street dealers than I care to remember to sentences which I regarded as ridiculous because they had records far less serious than Mr. Felton's. . . . I can't see how, when I put this case in the context of all the cases that I've sentenced, that a downward departure makes sense.

Dkt. No. 271, at 18-19.

Before sentencing Defendant to 262 months – the low end of the then-applicable USSG range – Judge Gertner described her sentencing practice as not reliant on the USSG: "I approach the sentencing where I try to figure out what's fair without looking at the sentencing guidelines. And then I try to look at the sentencing guidelines and figure out if they match my ideas." Dkt. No. 271, at 39. In sentencing Defendant to 262 months, the Court stated its belief that the sentence was "fair," and based "on the acts that you did, and how frightening their potential was and how troubling they could well have been." *Id.*, at 40.

2. December 2006 First Resentencing

After the First Circuit reinstated Defendant's 18 U.S.C. § 924(c) conviction on Count 3, the Court conducted a resentencing on December 14, 2006. In the four years he had been in prison, Defendant had at least three disciplinary violations, including two fighting violations and an assault on the Warden. Dkt. No. 332, at 20-21. Defendant argued in 2006, as he does now,

5

that he had been rehabilitated, and that his prison disciplinary record was insignificant. *Id.*, at

22-23, 28 ("it's a very different Leo who is here and who is learning … learning how to function

within the prison in his persona, in his true identity as a bi-racial person … He shows he is open,

he is flexible in his thinking").

But in 2006, as now, Defendant's purported "rehabilitation" was limited to coming to

terms with his own racial identity (out of necessity after it was made public), not accepting

responsibility for his crimes or curbing his violent tendencies.  Accordingly, Judge Gertner

refused a downward departure, stating:

> …sometimes there are offenses that are trumping offenses, that is to say,
> there are offenses that are so bad and so frightening and so dangerous that
> it takes an extraordinary change to make a difference there.  It takes
> something really out of the ordinary.  It takes a life change which I found
> this morning with your co-defendant but I don't necessarily find with you.

Dkt. No. 332, at 43.  Noting Defendant's lack of remorse and reliance on blame, Judge Gertner

did not vary downward but instead imposed the same sentence she had imposed in December

2002 – 262 months – plus 60 months for the reinstated Section 924(c) conviction. *Id.*, at 45.

**C.  The Government's Recommendation Is The Appropriate Sentence.**

The only things that have effectively changed since the previous sentencings of Defendant

is that his Section 924(c) conviction has been vacated (again), and this Court has determined that

two of his four prior convictions no longer qualify as crimes of violence for purposes of the Armed

Career Criminal Act (the ACCA).  Defendant remains a Career Offender under the USSG and his

prior felony convictions were not vacated.  Accordingly, the applicable USSG (setting aside the 5

year mandatory minimum for Count 3) is 235 to 293 months, rather than 262 to 327 months.

The USSG remain "the starting point and the initial benchmark" for sentencing, and after

calculating the appropriate USSG range the Court "must make an individualized assessment

based on the facts presented" and the other statutory factors. *Gall v. United States,* 552 U.S. 38,

49-50 (2007).  Title 18, United States Code, Section 3553(a) instructs "district courts to 'impose

a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as

outlined in Section 3553.  *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008), citing

*Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).  Section 3553 requires consideration of,

*inter alia*, the nature and circumstances of the offense; the history and characteristics of the

defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote

respect for the law, to provide just punishment for the offense, to afford adequate deterrence to

criminal conduct and to protect the public from further crimes of the defendant.  Where, as here,

the district court is resentencing a defendant, it may also take into consideration post-conviction

conduct when determining the appropriate sentence.  *See Pepper v. United States*, 131 S.Ct. 1299

(2011); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the

background, character, and conduct of a person convicted of an offence which a court of the

United States may receive and consider for the purpose of imposing an appropriate sentence.");

USSG §1B1.4 ("In determining the sentence to impose within the guideline range, or whether a

departure from the guidelines is warranted, the court may consider, without limitation, any

information concerning the background, character and conduct of the defendant, unless

otherwise prohibited by law.") (citing 18 U.S.C. § 3661); *see also United States v. Ventura*, 864

F.3d 301, 312-13 (4th Cir. 2017) (on remand for resentencing, holding that district court did not

act unreasonably or commit any procedural error in considering defendant's post-sentencing

7

conduct during his incarceration); *United States v. Stewart*, 686 F.3d 156, 164 n.5 (2d Cir. 2012)

("[T]he district court [is] required to resentence [a defendant] in light of the circumstances as

they [stand] at the time of [her] resentencing.  This principle applies to mitigating considerations

with equal force as it applies to aggravating ones." (internal quotation marks and citations

omitted) (alterations in original)).  Consideration of all of the relevant factors supports the

government's recommended sentence of 274 months.

        1.   The Nature and Circumstances of the Offense.

Defendant's hate-driven plot to detonate a bomb targeting black and/or Jewish institutions

was not only serious in its planning, it was potentially devastating to many innocent lives.  As

Judge Gertner twice commented, it is the frightening potential of what could have happened had

Defendant's plan not been foiled that must drive the sentence in this case.  Defendant's request for

immediate release fails to take account for the myriad of crimes of which Defendant was convicted,

including conspiracy to build a  destructive device, receiving explosives with the intent to kill,

bank and armored car robbery, counterfeiting and obstruction offenses, nor does it take into

consideration what could have happened, the destruction and loss of life that would have ensued,

had Defendant succeeded.

        2.   The History and Characteristics of the Defendant.

Defendant continues to mischaracterize, minimize and shift blame for his past violent

criminal conduct.  His past crimes are extremely violent in nature and occurred over a number of

years, as the Court is by now familiar, yet he continues to blame prison, the government and others

in positions of authority for his own actions.  *See* Dkt. No. 409-4, at 1 (referring to "lies" the

government offered about his background during his prior sentencings), 2 (arguing with respect to his New York aggravated assault conviction, "I didn't do what they claimed I did on that case.").

Moreover, although Defendant claims to no longer harbor the same views on race and goes to great length to explain those ideas and his transformation to the Court, he does not express remorse or regret about the decisions that led him to BOP custody, or about what could have happened had his terrorist plan succeeded. In fact, when Defendant received an inheritance upon the death of his mother while he was in prison, he chose not to pay his outstanding restitution obligation but rather purchased an undeveloped tract of land in California for himself. While his restitution is not due until his term of supervised release commences, surely paying $1,128 dollars in restitution would have demonstrated a significant change in the attitudes that led to Defendant's imprisonment.

Finally, Defendant continues to misbehave in prison, and continues to promise violence in support of his beliefs. Among the 35 incidents warranting discipline that Defendant has perpetrated while in the custody of the Bureau of Prisons, Defendant has been disciplined for Assaulting with Serious Injury (November 2015); Assaulting without Serious Injury (October 2005 and November 2016); Fighting with Another Person (December 2003, March 2004, January 2008, April 2012, December 2014, and April 2019); Possession of a Dangerous Weapon (January 2008, December 2008, and April 2016); Threatening Bodily Harm (September 2009); Possessing Intoxicants (July 2003); Possessing Drugs/Alcohol (November 2011); Using Drugs/Alcohol (December 2018); Disruptive Conduct (March 2004, January 2006, and November 2011); Encouraging Refusal of Work (November 2004); Interfering with Security Devices (February 2017); Destroying Property Over $100 (April 2016); Destroying Property $100 or Less (May 2016

and March 2017); Being Insolent to Staff Member (February 2009 and February 2017); Refusing

to Obey an Order (August 2009 and September 2009); Failing to Following Safety Regulations

(August 2009); Failing to Stand for Count (September 2009 and April 2011); Interfering with Staff

(April 2010 and November 2010); Being Absent from Assignment (July 2014 and November

2015); and Refusing Work/Program Assignment (February 2016).  Sanctions for these violations

have included the disallowance/forfeiture of *929 days of good conduct time*; disciplinary

segregation; the temporary loss of various privileges; and multiple disciplinary transfers.

Even more disturbing is the article authored by Defendant submitted in support of his

Motion for Release Pending Sentencing (Based on the COVID-19 Pandemic).  Dkt. No. 394-5.

In the article, *published in **November 2018***, Defendant stated "I hate the government," and

"[m]uch of what they alleged was false," in reference to the government's case resulting in his

convictions.  *Id.*, at 5.  He also threatened violence in concluding the article: apparently referring

to what he dubbed "the Trump regime's white supremacist movement," Defendant wrote,

"[organized white racism] isn't a game.  These people will kill you.  For my own part, if I remain

in this country when I get out, I would feel compelled to help stop them."  *Id.*, at 6.  Clearly,

Defendant is not rehabilitated and continues to pose a threat to society.

3.   The Need to Reflect the Seriousness of the Offense, Promote Respect for
     the Law and Provide Just Punishment and Afford Adequate Deterrence.

The gravity of Defendant's crimes cannot be overstated.   It is one thing to construct a

destructive device, which is illegal in and of itself.   It is even more serious and deserving of

additional punishment to be building such a device for the avowed purpose of killing persons and

destroying their property or memorials or museums because of their perceived ethnicity and race.

*See Barclay v. Florida*, 463 U.S. 939 (1983) (a sentencing judge properly may take into account

the defendant's racial animus towards his murder victim where that animus is relevant to several statutory aggravating factors).

That Defendant claims to have abandoned his plans for a racial war does little to diminish the seriousness of his crime. Even if one were to divorce the specific motivation for his crime, Defendant's devotion to carrying out terroristic acts to advance any agenda needs to be amply punished for deterrence purposes as well.

4.   Protection of Society from Further Crimes of the Defendant.

As his recent prison record and the November 2018 article demonstrate, Defendant needs to be isolated from society for its general protection. His history of violence makes him a poor candidate for rehabilitation, and his risk of recidivism is extremely high. The general safety of society would be much better served if Defendant's re-entry were delayed at least until his original 262 month sentence plus 12 months for his in-prison conduct are served.

5.   Defendant's Alleged Health Issues Do Not Warrant A Reduced Sentence.

In his Emergency Motion for Production of PSR, Defendant claimed to have several "comorbidities for COVID-19," including high blood pressure, chronic abnormal heartbeat, recent heart palpitations, ischemic attack causing temporary loss of vision; and a history of hepatitis. Dkt. No. 405, at 2. None of these conditions makes Defendant someone at higher risk for COVID019. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html. Defendant is 49 years old, his hepatitis is in remission and his high blood pressure is controlled by medication. Moreover, hours after he complained of heart palpitations in February 2020 (*see* Dkt. No. 405-3 (redacted medical record for 2/12/2020 at 13:57), he was administered an EKG which results were normal (but which results were not

11

submitted to the Court).  *See* Exhibit 1 (redacted medical record for 2/12/2020 at 20:01).  He was merely advised to reduce stress and caffeine intake.  *Id.*

The government is mindful of the concerns posed by incarceration during the COVID-19 pandemic.  However, Defendant has not demonstrated that those concerns should outweigh the interests of society in deterrence, punishment and public protection from violent offenders codified in Section 3553.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court sentence Defendant to 274 months in prison.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:    */s/Kristina E. Barclay*
KRISTINA E. BARCLAY
Assistant United States Attorney
United States Attorney's Office

May 5, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Kristina E. Barclay*
Kristina E. Barclay
Assistant United States Attorney

Date: May 5, 2020